ANTONIO KOLESHINSKI *vs.* ABRAHAM DAVID & another.

Middlesex.    December 4, 1951. — January 9, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Landlord and Tenant*, Repairs, Landlord's liability to tenant or his family or his invitee, Contract of letting. *Negligence*, Repairs. *Evidence*, Conflicting statements of witness. *Agency*, Scope of authority or employment. *Practice, Civil*, Amendment.

Testimony given by a tenant of a dwelling on direct examination and repeated on redirect examination, in substance that a promise by his landlord to make outside repairs to the dwelling was a term of the letting, was not withdrawn in the circumstances although the witness also gave testimony on cross-examination, which he stated on recross-examination he did not wish to change, that he could not tell the land-lord what to do and that the landlord did not have to make repairs as it was his property: the effect of the entire testimony was for the jury.

Evidence would have warranted findings that as part of a contract of letting of a dwelling the landlord agreed to make repairs to the outside of it, that he was negligent in the manner of repairing the whole of a front piazza after it had become shaky and unsafe, and that he was liable to the tenant for personal injuries sustained a few months after such repairs when one of the floor boards of the piazza broke off and split as the tenant was walking over it.

Evidence warranted a finding that a brother of the owner of a dwelling had authority from the owner to rent it, to fix the rent, and in con-sideration of its payment to promise to make repairs to the outside of the dwelling.

There was no error in the allowance during the trial of an action of an amendment to the declaration adding a count conforming to evidence introduced.

TORT. Writ in the Superior Court dated April 7, 1947.

The action was tried before *Dowd,* J.

In this court the case was submitted on briefs.

*F. G. Lichtenstein,* for the plaintiff.

*D. H. Fulton,* for the defendant Sally David.

RONAN, J. This is an action of tort to recover for per-sonal injuries alleged to have been sustained by the plaintiff on March 3, 1947, when the end of one of the floor boards

of the front piazza of a single dwelling house, which was owned by the defendant Sally David and occupied by the plaintiff, broke off and split. The original count of the declaration was waived and a new count was added during the trial subject to the exceptions of the defendants. This count alleged a contractual agreement to make repairs to the outside of the house, the negligent making of repairs, and the resulting injury to the plaintiff. The judge directed a verdict for both defendants subject to the plaintiff's exception.

The plaintiff quit his employment at a hospital with which the defendant Dr. David was connected in November, 1943. The rent of the dwelling in which he lived had been included in his wages while he was engaged at the hospital. It therefore became necessary to make new arrangements if he was to continue to occupy the dwelling. The plaintiff testified that Dr. David and he agreed upon the rental and that the plaintiff was to make the inside repairs, and that Dr. David said that he would do all the outside repairs. Later he testified that Dr. David told him that if he wanted any inside repairs he could do them himself. On cross-examination the plaintiff testified that what Dr. David said was, "If you want to do inside, I do all the work outside. If you want to do inside, anything for yourself, paper, whitewash, do it for yourself. . . . It is fair enough for you." But as to outside, Dr. David said, "I am going to do everything." The plaintiff also testified that he was not bound to do any inside repairing, that Dr. David could not tell him what to do, that Dr. David told "me he going to do," but that he could not tell Dr. David what to do, and that Dr. David did not have to make repairs as it was his property. The plaintiff solemnly asserted that this was a true statement of his bargain with Dr. David, no matter what he had previously testified to, and that was the way he wished to leave it. On redirect examination he testified that Dr. David said, "You can make whatever repairs you want inside, I will only make the outside repairs." On recross-examination he testified that he did not wish to

change the testimony which he had already asserted showed the terms of the bargain.

The defendants contend that the plaintiff is bound by his testimony that Dr. David was not required to make any repairs, and that this was the view which the plaintiff finally adopted and preferred to any other testimony he had given on that point. It is to be noted that the plaintiff, when asked what the parties said at the time of the letting, always stated that Dr. David said that he would make the outside repairs. The jury saw and heard the plaintiff. They could find that Dr. David promised to make the outside repairs, and that the testimony of the plaintiff that Dr. David did not have to repair was an opinion based not upon the promise but upon the fact that the plaintiff thought that he could not compel Dr. David to repair the property or, as he expressed it, "I can't tell him to do outside work. . . . It was his property." See *Collins* v. *Humphrey*, 314 Mass. 759, 762; *Cerez* v. *Webber*, 318 Mass. 703, 706. In any event, after he testified that Dr. David was not required to repair, he repeated in redirect examination that Dr. David said he would make the outside repairs and on recross-examination that he did not want to change what he had said in cross-examination. In this situation it cannot be said that all the testimony that the plaintiff had given as to the terms of the letting had been withdrawn and that there had been substituted therefor his statement that Dr. David was not required to repair. In other words, the situation was not the same as if at the end of the trial this statement alone constituted all the evidence on this phase of the case. The case comes not within the principle of *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, but within the class of decisions illustrated by *Ruane* v. *Doyle*, 308 Mass. 418, *Fitzgerald* v. *McClymont*, 314 Mass. 497, and *Shopneck* v. *Rosenbloom*, 326 Mass. 81.

There was evidence, viewed in the light most favorable to the plaintiff, that when the plaintiff became a tenant in 1943 this small piazza, which was only about five or six feet long and six or seven feet wide, was in a reasonably

safe condition but that in 1945 the gutters had fallen down allowing water from the roof to drop upon a concrete step which led down from the piazza to the yard. The ends of the piazza floor boards projected four or five inches over this step and became split. There were cracks in some of the boards in the middle of the piazza. The stringers supporting the floor were all rotten. The piazza became shaky and springy and yielded as one walked over it. Dr. David was frequently about the premises. At times he examined the piazza with the plaintiff. He knew it needed repairs and so advised his sister, the defendant Sally David. Dr. David in the fall of 1946 sent a carpenter to repair the piazza who did nothing but nail down the floor boards to the stringers. The piazza after this work was not as bad as it had been but it was still shaky. The plaintiff told Dr. David that the piazza was not safe and to do the job right the stringers ought to have been removed as they "get rotten." Dr. David replied, "it is safety. He go and try. . . . Go yourself. It is safety." The condition of the piazza became worse in five or six months and "all those nails started to come out again." Dr. David, advised of this condition, did nothing. The plaintiff in leaving his home on March 3, 1947, stepped on a board which broke off four or five inches from the front end and the rest of the board was split.

The jury could find that Dr. David as a part of the letting agreed to make the outside repairs, that the work was done negligently, and that as a result the plaintiff while passing over the piazza was injured. Upon such findings liability of the landlord would be established. *Feeley* v. *Doyle,* 222 Mass. 155. *Cleary* v. *Union Realty Co.* 300 Mass. 312, 313. *Diamond* v. *Simcovitz,* 310 Mass. 150, 153. *Blood* v. *Dewey,* 318 Mass. 79, 84.

It is contended that the breaking of the board at the time of the accident was not shown to have been causally related to the repair job of 1946. Here the jury, again adopting the plaintiff's version, could find that the entire piazza had become shaky, springy, and unsafe, and that

merely nailing split and cracked floor boards to rotten stringers was inadequate to restore the safety and soundness of the structure, or prevent it from becoming unsafe within five or six months or from deteriorating into such a condition as to be incapable of supporting the weight of a person passing over it. In other words, the jury could find that the repairs were negligently made. The case is distinguishable from *Sawyer* v. *Atherley*, 312 Mass. 596, upon which the defendants rely. In that case, there was nothing to show that the particular step which caused the accident appeared to need any repairs or that the landlord made any repairs to it. The instant case resembles *Connery* v. *Cass*, 277 Mass. 545, where the whole of an old tin roof was badly in need of repairs. The patching of one spot only to be followed by a leak in another could have been found to be repairing in a negligent manner. There the unit for repairs was the whole roof, here the whole piazza which had become springy and shaky. See *Shute* v. *Bills*, 191 Mass. 433, 437; *Cleary* v. *Union Realty Co.* 300 Mass. 312, 313–314; *Blood* v. *Dewey*, 315 Mass. 500, 503–504.

The defendant Sally David testified that she became the owner of the property in 1943 or 1944, that her brother, the other defendant, Dr. David, collected the rents and had general management of the property for her, and that everything he did in connection with that house he did as her agent. The earlier testimony of the plaintiff with respect to his conversation with Dr. David as to the letting of the house and the making of repairs was admitted against the latter and not against his sister. The greater portion of the evidence as to the repairs and the condition of the piazza was introduced through various witnesses without any restrictions. Indeed, the defendant Sally David herself furnished much of the evidence as to the terms of the letting through the cross-examination of the plaintiff by her counsel. Enough appears, apart from the evidence that was limited as against her brother only, to present questions for the jury on the matters just mentioned. The evidence, if believed, was also sufficient to show that her brother had

authority to rent her house, to fix the rent, and in consideration of its payment to promise to make outside repairs. *Cleary* v. *Union Realty Co.* 300 Mass. 312. *Skolnick* v. *East Boston Savings Bank,* 307 Mass. 1, 5.

There was no error in allowing the plaintiff during the trial to add a count to the declaration based on the negligent making of repairs which the defendants could be found bound to make in a reasonably safe manner. *Pizer* v. *Hunt,* 253 Mass. 321, 330–332.

Both of these defendants could be joined in this action of tort, their relationship to each other concerning the property and to the plaintiff ascertained, and their respective liability, if any, determined. G. L. (Ter. Ed.) c. 231, § 4A, inserted by St. 1943, c. 350, § 1. *Collins* v. *Croteau,* 322 Mass. 291, 295–296. *Nunan* v. *Dudley Properties, Inc.* 325 Mass. 551.

*Exceptions sustained.*