Stuart S. GOULD et al., Appellants,

v.

Jacques DeBEVE et al., Appellees.

No. 17909.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 4, 1963.

Decided Feb. 6, 1964.

Petition for Rehearing en Banc
Denied April 30, 1964.

------◆------

Mr. Walter J. Murphy, Jr., Washington, D. C., with whom Messrs. H. Mason Welch, J. Harry Welch, J. Joseph Barse and James A. Welch, Washington, D. C., were on the brief, for appellants.

Mr. Paul H. Weinstein, Washington, D. C., with whom Mr. Laurence Levitan, Washington, D. C., was on the brief, for appellees.

Before EDGERTON, Senior Circuit Judge, and WILBUR K. MILLER and MC-GOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

In a complaint filed in the District Court, two causes of action were asserted in respect of the fall by a small boy, 2½ years old at the time of the accident, from the third-floor window of an apartment house. One was by the boy himself for damages suffered by him as a consequence of the fall; and the other was by his mother for medical expenses incurred by her in treating his injuries. The jury found for the boy in the amount of $2,500, but it held against the mother. This appeal is from the trial court's failure, on motion of the defendants, either to give judgment for defendants as against the boy despite the jury's verdict in his favor, or to order a new trial of his claim. The principal issue on this appeal is whether the trial court, after having found the boy to be a trespasser upon defendants' premises as a matter of law, erred in permitting the jury to pass upon the question of defendants' liability to him. We hold this not to

have been error and affirm the decision of the District Court, but we recognize that the finding as to trespass calls for careful scrutiny of the facts giving rise to the injury. Thus, we examine them at the outset.

I

Defendants are the owners and operators of rental housing accommodations. In March of 1960, they leased an apartment to one Mrs. Dodd for use by her and her two children. In June of 1960, Mrs. DeBeve and her son Jacques (the boy subsequently injured) came to stay with Mrs. Dodd temporarily. Shortly thereafter Mrs. DeBeve decided to remain indefinitely, under an arrangement with Mrs. Dodd whereby the latter was reimbursed for one-half of the rent paid by her to defendants. This arrangement was not made known to defendants nor consented to by them in any way. It was, in fact, contrary to a provision in Mrs. Dodd's lease which restricted permanent occupancy to Mrs. Dodd and her family; and it was because of this lease provision that the trial court ruled the two and one-half year-old boy to be a trespasser in legal contemplation.

The accident occurred July 6, 1960. The DeBeve boy and the Dodd children (aged approximately three and five) were getting dressed for bed in one of the bedrooms, and Mrs. Dodd and Mrs. DeBeve were seated in an adjoining room. A bed was next to the window, which was open but with a screen in place. Suddenly one of the Dodd children screamed and said "Jackie fell." On entering the bedroom, the mothers found the screen gone from the window and the DeBeve boy fallen through the window to the ground three floors below.

There was uncontradicted testimony to the effect that the screen was warped and cracked, and that it did not fit securely into the grooves in the window frame because of the rotting away of the latter. The screen had fallen or been knocked by a child from the window on earlier occasions; and there was testimony by Mrs. Dodd, corroborated by Mrs. DeBeve, that the former had on

several occasions notified defendants of the hazard represented by the screen and urgently requested that suitable repair or replacement be made.[1] The absence of any response to these appeals had caused the window to be kept closed as a safety measure, but it was open on July 6—the day of the injury—because of the extreme heat. The lease obligated the landlord to make all repairs required on the premises, except those necessitated by damage caused by the tenants.[2]

1. The lease contained a provision that repairs necessitated by the misuse or neglect of the lessee should be made by and at the expense of the lessee, under the supervision of the lessor. It is urged upon us that defendants may not be held liable for a failure to repair when the obligation to do so, on the evidence, was in some one else. The evidence that the occupants were responsible for the defects in the screen does not seem so clear to us as defendants assert it to be. In any event, the trial court left this issue to be resolved by the jury, under instructions which put the plaintiffs under a burden of proving that the defect was not caused by the neglect of either of the mothers or any of their children. We think this handling of the matter was warranted on the record. There is nothing to indicate that defendants' failure to respond to Mrs. Dodd's requests to repair was, at the time, based upon the position that the obligation was, under the circumstances, one which devolved upon Mrs. Dodd under the aforementioned lease provision.

2. On this appeal defendants have complained of the handling by the trial court of certain ordinances of the District of Columbia offered in evidence. At the instance of plaintiffs there were received in evidence two sections of the D.C. Housing Code. One, Section 2501, is a general admonition that housing accommodations "shall be maintained and kept in repair so as to provide decent living accommodations for the occupants;" and that what is required to this end are "repairs and maintenance designed to make a premises or neighborhood healthy and safe." The second, Section 2506, relates to window sashes and provides that they shall be kept in good condition. Having received these in evidence, the trial judge instructed the jury that they were to be considered only in connection with the weighing of the wilfulness of defendants' asserted neglect and for no other purpose. While we might have some question as to the relevance of Section 2506, we doubt that any significant degree of prejudice resulted from its admission. Section 2501, contrarily, appears relevant, and could properly be used, as it was, not to establish negligence *per se* but as a factor bearing upon the degree of wilfulness inherent in defendants' failure to make repairs after notice.

Defendants also protest the failure of the trial court to admit a section of the Housing Code offered by them, i. e., Section 2608. This requires owners of residential buildings to provide screens for all external openings from March 15 to November 15. Because this section goes on to state that the screens shall be such as will effectively keep insects out, defendants argue that this is the sole function which the Housing Code intended a screen to perform. That the Housing Code may perhaps concern itself only with flies does not define the duties owed to children under the general law of negligence. The trial judge was correct, therefore, in regarding the ordinance as neither pertinent nor relevant, there being no issue as to the efficacy of the screen in terms of insects and no basis for allowing municipal sanitation requirements to fix the outer limits of responsibility under the law of torts. Whatever the purposes of the framers of the Housing Code may have been, we doubt that many people with small children have regarded the sole function of a screen in an upstairs bedroom as that of keeping flies out. There are, obviously, limits upon the extent to which screens either can, or are expected to, prevent people of all ages and sizes from falling out of windows. But when the tenant here repeatedly complained about the dangerous condition of the screen, she was not talking about the dangers or infections from flies, nor do we believe she was so understood. We do not think that requiring landlords to keep screens in normal repair places an undue burden upon them. The questions remain whether this landlord owed such a duty to this child and whether the defective screen could have been a proximate cause of the accident.

In any event the principal ground advanced for the exclusion of Section 2608 was that no reference had been made to this section of the Code in the pre-trial statement. We enter here into the area of the trial court's justifiably large discretion in the conduct of a trial, and we cannot say that that discretion was abused in this instance.

## II

These, then, are the circumstances in which the trial court accorded the status of trespasser to the 2½ year-old boy and proceeded to define the legal obligations owed to him in that capacity by defendants. There is no attack here upon the finding of trespass and, for purposes of this appeal, we must accept it as technically accurate. But, on these facts, we are vividly reminded that the concept of trespass, like other legal abstractions, casts its net very widely indeed, and that meaningful classification for particular purposes can only begin after the catch and not before. There are, obviously, trespassers and trespassers. The poacher upon the manorial estate of 18th Century England—that figure about whom revolved so much of the developing law of landowners' liabilities to unauthorized visitors—defies identification with the child in this case, albeit a common legal label has been affixed to them.[3] The manifest differences between them suggest strongly that projecting the label from the one to the other can not rationally be an automatic determinant of the result in each case in which injuries attributable to the landlord have been sustained.[4]

But, as the appellee here does not resist the designation given him by the trial court, so the appellants do not quarrel with the court's instructions to the jury as to the measure of the duty owed by a landlord to a trespasser. These were lengthy and detailed and may best be described in the court's own culminating words:

"[The plaintiffs] must prove by a fair preponderance of the evidence that the defendant was guilty of wilful or wanton misconduct which proximately caused the injuries to the child. * * * [W]ilful or wanton misconduct is defined as wilfully performing or wilfully failing to perform any act with knowledge that the performance or non-performance of that act was likely to result in injury, or performing or not performing that act with ruthless and wanton disregard of its probable consequence."

Appellants complain, we repeat, not of what was said to the jury by way of definition of their duty, but of the opportunity given the jury to weigh that definition against the proof produced. The contention, in short, is that, on the evidence received, no jury could rationally find a level of fault rising to that established in the instructions. We are no more persuaded of this than was the trial judge.

Defendants were in the business of owning and operating rental housing. By their own contractual undertaking, as well as by reason of legislative command, they were obligated to provide and maintain decent and safe quarters where ordinary life might go on. That obligation certainly comprehends, in the Washington summer when windows must be raised, screens which keep flies out and young children in. There was substantial evidence that the screen was defective in respect of its safety function; and there was also corroborated testimony (which appellants in their brief say "for purposes of this appeal must be conceded as true") that defendants had repeatedly been notified of the dangerous condition of the screen and requested to discharge their obligations

---

3. "If his wrong [in entering upon the land] puts the trespasser beyond the pale of a duty of ordinary care, this is because he is treated as something of an outlaw who is not entitled to the benefit of rules requiring humane considera-·tion for people generally. Perhaps landed gentry did once so regard the poacher in England. A trace of this attitude may still linger in the more emotional aspects of the notion that the useful exploitation of land should not be interfered with. But such an attitude finds little modern acceptance in our law. It seems especially inappropriate here in view of the relatively innocent character of many trespasses." 2 Harper & James, The Law of Torts § 27.3, at p. 1439.

4. Cf., 2 Harper & James, The Law of Torts § 27.7.

with respect to it. These requests were ignored, and what was feared would happen did happen. We think a jury might well have concluded from these facts that defendants were guilty, in the language of the instruction, of "wilfully failing to perform [an] act with knowledge that * * * non-performance of that act was likely to result in injury." We think, in any event, that the trial court committed no error in leaving the matter to the jury to decide.

Had the DeBeve boy been one of Mrs. Dodd's children, there would seem to us to be little question as to the crystallization on the evidence of a jury issue. We do not think calling him a trespasser dictates a different result.[5] He was well within the range of foreseeability in terms of those persons to whom injury might result from an unsafe screen, and, at least as to him, we do not think that the terms of the lease are the outer limits of defendants' vision. His mother might have been required to remove him and herself from continuing residence in the apartment, but he appears to us to be one of the many children, of differing legal relationships to the premises, who were likely to be physically present in it, and for whom the defective screen presented a hazard.[6] To hold otherwise would be to ignore reality in favor of technicality in administering justice.

One who puts his land to profitable use by building apartments and inviting significant numbers of people to lead their lives therein inevitably takes on an aspect different from the country squire who wants mainly to be left alone on his rural acres. Those who come without express permission on the premises of each also have differing guises and purposes. Defining the liability of the one to the other cannot be divorced from the factual context, nor can the law be sensibly applied in this area without taking account of diverging circumstances. There obviously continue to be many situations where an intruder upon the property of another will not be covered by the law of negligence. All we hold here is that this 2½ year-old boy was not such an intruder upon defendants' premises as to be beyond the reach of defendants' duty to accommodate those premises safely to the incidents of normal living.

### III

Over and above the central issue of liability to a trespasser discussed hereinabove, defendants urge other errors as requiring reversal. We have considered them and found them insubstantial. One appears to go to the trial court's treatment of contributory negligence and assumption of risk. Full instructions were given on these matters,

5. The sole case authority relied upon by defendants is Firfer v. United States, 93 U.S.App.D.C. 216, 208 F.2d 524 (1953). This was a suit against the Government under the Federal Tort Claims Act by an adult visitor to the Jefferson Memorial. Having entered the Memorial by the wide and commodious paving and steps provided for the ingress and egress of visitors, the plaintiff chose to leave by going through the columns at the rear, jumping down some dangerously high decorative marble formations, and traversing a wholly enclosed grassy plot clearly not intended for public access. The injury came from falling in a hole in this plot. The plaintiff's decision to leave the Memorial in this unorthodox and unauthorized fashion was not due to confusion engendered by deep emotions stirred by his confrontation with the statue of the great Virginian, but only by a desire to seek a shortcut back to his car. This court, not surprisingly, affirmed the action of the trial court in dismissing the complaint after the opening statement. It goes almost without saying that we find the *Firfer* case markedly different on its facts from the one before us, and the exculpation of the Government there far from determinative of defendants' lack of liability here.

6. "But a trespasser's presence is often foreseeable in fact, and when that is so, the occupier should not be exempted from the obligation of ordinary care by a rule of law founded on a premise of fact shown not to exist in this case." 2 Harper & James, The Law of Torts, § 27.3 at p. 1437.

but the court pointed out that these could operate only to defeat the mother's claim (which, in the light of the differing verdicts returned, presumably it did) since they were not imputable to the boy. We believe this to have been correct.

■ Objection was made below to the failure of the court to give an instruction as to an intervening cause of the accident, founded upon the failure of the two adults to do all that they might have done to prevent it. But this appears to be in essence a variant of the contributory negligence or assumption of risk point, and we do not discern any prejudicial error to be present here. The court gave full and proper instructions on the concept of proximate cause and, as we have stated above, there was evidence from which the jury could, without simply indulging in sentimental speculation, have found a continuous connection between defendants' culpable omission to act and the injury to the boy.

Affirmed.

WILBUR K. MILLER, Circuit Judge, dissenting.

The language and length of the foregoing opinion demonstrate the difficulty the majority met with in affirming a judgment which was based on sympathy instead of legal liability. In the circumstances, the appellant owed Mrs. DeBeve and her child no duty whatever with respect to screens; they were plainly trespassers, as the District Court said and as the majority opinion says.

Even as to an actual tenant, the appellants' only duty under § 2806 of the Housing Code [1] was to provide screens which would effectively keep insects out.

I think the majority err in adding another requirement: that owners of residential buildings must provide "screens which keep flies out and children in." This addition is unjustified under applicable regulations or otherwise. The notion that screens are to "keep children in" has no foundation whatever, as far as I know. The Housing Code does not require screens to be of such strength as to form protective barriers which will withstand the violent impact of a child's body. As we said in Peigh v. Baltimore & O. R. Co.: [2]

"* * * Violation of a regulation does not, *ipso facto*, give rise to civil liability unless the regulation is one designed to prevent the sort of harm to the individual relying on it which has in fact occurred. * * *"

The regulation here involved was promulgated, as its terms clearly show, to require screens for the protection of tenants against flies and mosquitoes during the season when such insects appear. It was not designed to prevent the sort of harm which occurred in this case: the safety of children was not its goal.

Leaving small children, unattended, to play on a bed placed beside an open third-story window, protected only by a screen which they knew to be defective, was an inexcusably reckless act on the part of the two mothers, but for which the unfortunate accident would not have occurred. It does not appear that the child would not have fallen if the screen had not been defective; this alone is enough to prevent recovery. Moreover, the screen involved in this case, though defective, was in place, serving its purpose of keeping out flies and mosquitoes;

1. That section is as follows:
    "The owner or licensee of each residential building shall provide screens for all openings to the external air from March 15 through November 15, both dates inclusive. Such screens shall have a minimum of 16 meshes to the inch or the equivalent effectiveness thereof and be so maintained as to prevent effectively the entrance of flies and mosquitoes into the building; Provided, that effective means other than screens may be substituted therefor when specifically approved by the head of the Housing Division of the Department of Licenses and Inspections. All hinged screen doors shall open outwardly and be self-closing. Half screens may be used for double hung windows if they are so designed that they can readily serve either half of the window."

2. 92 U.S.App.D.C. 198, 200, 204 F.2d 391, 393, 44 A.L.R.2d 671 (1953).

so § 2806 of the Housing Code was not violated.

I cannot agree to this opinion which imposes liability upon a landlord for injury sustained by a person to whom he owed no duty because a screen could not withstand violence it was not designed to meet. My view is that the judgment should be reversed and the case remanded for the entry of judgment for the defendants, *non obstante veredicto*.