GARY S. MARKARIAN & another *vs.* SARAH CHAVOOR SIMONIAN & another, trustees.

Worcester.    May 5, 1977. — November 17, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Landlord and Tenant,* Repairs, Landlord's liability to tenant or one having his rights. *Negligence,* One owning or controlling real estate, Repairs. *Agency,* What constitutes.

In an action of tort by a tenant and his minor child for the alleged negligent installation by the mother of the defendant landlords of a screen in the low kitchen window of the apartment rented, through which the child fell and was injured, evidence warranted findings that the defendants' parents, the original owners, had made an agreement with the adult plaintiff at the commencement of the tenancy to do repairs on the premises, and that the agreement applied at the time of the accident six years later [673]; a conclusion that the parents of the defendants acted as their agents was warranted by evidence that the parents were actively engaged in the management of the premises to the knowledge of the defendants, and that they adopted and acquiesced in actions of their parents with respect to leasing agreements [673-674].

In an action for injuries sustained by the plaintiff child when he fell out of the low kitchen window of his family's apartment as he was attempting to sit on the window sill and the screen "burst" open from the bottom, evidence that an agent of the defendant landlords, pursuant to a repair agreement with the adult plaintiff, recently installed a new screen narrower than the original screen, which had

Markarian *v.* Simonian.

been installed in a secure manner, that the agent bent out the screen runners to a forty-five degree angle, and that she said she was repairing the window so that it would be safe would have warranted a finding of negligence in the installation óf the new screen for which the defendants were liable. [674-676]

TORT. Writ in the Superior Court dated June 28, 1966.

The case was tried before *John P. Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Roger J. Brunell* for the plaintiffs.

*Edmund M. Pitts* for the defendants.

LIACOS, J. On June 28, 1966, Gary Markarian, the minor plaintiff, and his father, commenced an action in tort in the Superior Court in the county of Worcester. An amended declaration, filed on January 29, 1968, contained four counts; two sought damages for injuries suffered by the minor plaintiff on the basis that the defendants had been negligent in the maintenance of residential premises in which the minor plaintiff resided with his family, and the other two sought damages on the theory that the defendants were negligent in making repairs to those same premises. At the close of the evidence the defendants' motion for a directed verdict on all counts was allowed. The plaintiffs appealed to the Appeals Court on a bill of exceptions which contains all the facts necessary to resolve the appeal. We transferred the case here on our own motion.

The facts viewed in the light most favorable to the plaintiffs[1] show that the injuries complained of took place in a dwelling house originally owned by the parents of the defendants. In 1949 the defendants' parents conveyed the property to a trust of which the defendants Sarah Chavoor Simonian and Jacob Chavoor were trustees. There was evidence from which the jury could conclude that the parents continued to take an active role in the mainte-

[1] See *DiMarzo* v. *S. & P. Realty Corp.,* 364 Mass. 510, 514 (1974); *Grant* v. *Carlisle,* 328 Mass. 25, 28 (1951).

nance and management of the property despite this conveyance. There was evidence to suggest that the parents made the arrangements with new tenants and that part of these arrangements included an agreement to make repairs. The father of the minor plaintiff testified that he and his family moved into the premises in question in 1959, pursuant to an agreement made with the defendants' father and that the terms of the agreement included the making of repairs by the defendants' parents. Mrs. Simonian acknowledged that her parents had made such representations.

The minor plaintiff was injured when he fell through a window screen which, allegedly, had been negligently installed by the defendants' mother. There was evidence from which the jury could conclude that in June, 1965, Mrs. Simonian's mother, Annie Chavoor, responded to a complaint from the Markarians by undertaking to remedy a problem with the kitchen window in the premises occupied by the Markarians. It could be found that Mrs. Chavoor, in the process of making the necessary repairs, caused the screen which had previously been in the window to be knocked out of the runners in which it had been held and that as a result of this occurrence the runners were bent out at a forty-five degree angle from their usual position. Further evidence presented would have allowed the jury to conclude that Mrs. Chavoor then replaced the screen with a new screen which was of a narrower width than the original. The window measured thirty-two inches wide while the new screen measured thirty and one-half inches wide. The jury could further have found that narrower replacement screens had been installed in the other apartments in the building but that new runners had been provided in those other apartments to accommodate the narrower width of the new screen.[2]

After this repair was made Gary Markarian, the minor plaintiff, then two years old was playing in the kitchen.

---

[2] The mother of the minor plaintiff testified that Mrs. Chavoor stated her intention to send a carpenter to install a new screen and new runners.

According to testimony, Gary went near the window, put his hands on the window sill which was close to the floor, put one knee in the same location and in the process of attempting to assume what appeared to be a sitting position brought his shoulders in contact with the screen which thereupon "burst" open from the bottom. Gary fell two stories to the ground.

At the trial the plaintiffs presented expert testimony with regard to the runners. The plaintiffs asked each expert whether the runners in their bent condition could properly hold the replacement screen. Each expert was asked also whether he had an opinion as to what caused the runners to become bent. On objection, the judge excluded these questions. The plaintiffs excepted and made an offer of proof to the effect that the runners could not hold the screen due to the bending out of the outer edge, and that the slightest pressure would cause the screen to pop out. The plaintiffs also offered to prove that the outer edges probably were bent due to blows by a hammer on the original screen by Mrs. Chavoor during the course of the repair to the window in question.[3]

At the close of this evidence the judge granted the defendants' motion for a directed verdict. The plaintiffs appeal from that ruling as well as the judge's exclusion of the expert testimony.

1. It has been well settled in this Commonwealth that in the absence of an agreement imposing a duty on the landlord to keep the premises in a condition of safety, the landlord is not liable in tort to a tenant for injuries suffered by a tenant for a failure to execute such repairs. *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 513 (1974). *Conahan* v. *Fisher*, 233 Mass. 234, 237-238 (1919). A distinction has been made between such agreements, which imply access by the landlord to the property to ensure its safe condition, and ordinary agreements to

---

[3] On cross-examination one expert testified that the runners were adequate to hold the screen if it were properly fitted.

make repairs, which are construed as requiring the tenant to give the landlord notice of a dangerous condition. *Di-Marzo* v. *S. & P. Realty Corp., supra.* While a tenant may not recover in tort for the failure of a landlord to effectuate requested repairs under an ordinary repair agreement, a tenant may recover for injuries suffered as a result of repairs effectuated in a negligent manner. *Id. Koleshinski* v. *David,* 328 Mass. 276, 279 (1952). On the other hand, if repairs are undertaken gratuitously, in the absence of a valid agreement, the plaintiff must prove and establish gross negligence in the effectuation of the repair in order to recover. *Carney* v. *Bereault,* 348 Mass. 502, 508 (1965).

Since the plaintiffs' declaration was grounded on ordinary negligence, their success on the merits, aside from the issue of the sufficiency of the evidence on the issue of negligence itself, depends on whether there was sufficient evidence to find that there existed an agreement between the tenant and the landlords or their agents to effectuate such repairs.[4]

A. The bill of exceptions contains evidence that there was an agreement by the defendants' parents to do repairs on the premises. The defendants concede that much, but argue that the agreement, if any, applied only to those repairs necessary at the time of the commencement of the tenancy and not those needed six years later. However, unlike the facts in *Ryerson* v. *Fall River Philanthropic Burial Soc'y,* 315 Mass. 244, 251 (1943), the evidence before us in the bill of exceptions is not readily susceptible to such a limited construction and we decline so to construe it. Cf. *Crowe* v. *Bixby,* 237 Mass. 249, 252-254 (1921).

B. A more substantial question is whether this agreement is one for which the defendants can be held legally responsible. As there is no evidence in the bill of exceptions which would warrant a jury in finding that the de-

---

[4] The declaration also charged negligent maintenance of the premises. As that point has not been briefed, we do not consider it.

fendants had personally entered into such agreements, the sufficiency of the evidence on this point must rise or fall on whether the defendants' parents can in some way be viewed as having acted as the agents of the defendants.

There was evidence from which a jury could conclude that Mr. and Mrs. Chavoor were actively engaged in the management of the premises in question. These management responsibilities included the making of arrangements with new tenants and agreements to make necessary repairs. The evidence showed that they made the repairs pursuant to those agreements. Moreover, there was evidence that all of this was done with the knowledge of the defendants over a considerable period of time. On this evidence the jury could conclude that there did exist an agency relationship between Mr. and Mrs. Chavoor and the defendants. See *Hurley* v. *Ornsteen,* 311 Mass. 477, 481-482 (1942). It could be found that the agency relationship arose by implication, in that the defendants adopted and acquiesced to the action of the Chavoors with respect to the terms, conditions and performance of the leasing agreements. *LaBonte* v. *White Constr. Co.,* 363 Mass. 41, 45 (1973). It follows that, if there was sufficient evidence of negligence, the jury could have found the defendants liable. *Douglas* v. *Holyoke Mach. Co.,* 233 Mass. 573 (1919). We now turn to the issue of the sufficiency of the evidence of negligence.

2. In support of the ruling of the trial judge, the defendants point to our decision in *Chelefou* v. *Springfield Inst. for Sav.,* 297 Mass. 236 (1937), arguing that it stands on all fours with this case. In *Chelefou* the facts stated in the opinion show that, pursuant to an agreement between the parties, the landlord had installed window screens in the plaintiff's premises on windows where screens had not been located previously. Installation of the screens in *Chelefou* apparently was brought about by warm weather and the need for protection against insects. The evidence showed that the screens were not installed in accordance with the usual procedure, and that the landlord being cognizant of the deficiencies of installation promised to fix the

screens later. The injury complained of apparently happened when the minor plaintiff plunged through one of the newly installed screens "head first." *Id.* at 238.

The Chelefou court upheld the judge's direction of a verdict for the defendant, not on the ground that the installation of the screen was not defective, but rather that the purposes of the agreement to install the screen did not include the protection of the child, see *Shaw* v. *Butterworth,* 327 Mo. 622, 626 (1931). Thus, the court reasoned that the injury which took place was not a foreseeable harm within the purpose of the agreement to repair and was not the kind of risk which the landlord would be required to anticipate in undertaking the repair.

The defendants argue that *Chelefou* is indistinguishable from this case. We believe they have disregarded certain crucial factual differences. First, there is the fact that in the instant case the window screen was installed ancillary to the repair of the kitchen window which prior to the repair was inoperable and which thus posed no danger to occupants of the house. Moreover, the jury could conclude that the original screen was installed in a secure manner, but that the process of repair engaged in by Mrs. Chavoor created a situation in which a previously safe installation was made dangerous due to the distortion of the runners. In addition, the low height of the window sill in the plaintiffs' apartment made it likely that a defective installation could pose a threat of harm to a child. Moreover, there was testimony that Mrs. Chavoor said she was repairing the window so it would be safe. On these facts, the jury could conclude that the purposes of the repair went beyond those in *Chelefou.* The instant case is thus within the line of cases distinguished by the court in *Chelefou* rather than within *Chelefou* itself. It follows that the directed verdict was not properly granted.

In light of this conclusion, we need not take the opportunity to overrule *Chelefou,* although the rule in that case is of dubious validity. *Gould* v. *DeBeve,* 330 F.2d 826 (D.C. Cir. 1964). Nor, need we consider the impact of *Mounsey* v. *Ellard,* 363 Mass. 693 (1973). Cf. *Lindsey* v.

*Massios*, 372 Mass. 79 (1977); *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510 (1974). See also *King* v. *G & M Realty Corp., ante*, 658 (1977).

3. Since this case must go back for retrial we feel it would be helpful to comment on the exclusion of the plaintiffs' expert testimony. While the admission of such evidence is within the discretion of the trial judge, and we are not willing to say that he abused that discretion, we do think that the offer of proof indicates that such testimony would have been of aid to the jury. Its admissibility should be considered anew at the new trial.

4. The judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

*So ordered.*