THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC.
*vs.* ROBERT YANOFSKY, trustee.

Middlesex.   December 5, 1979. — April 3, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

*Landlord and Tenant,* Repairs, Landlord's liability to tenant or one hav-
ing his rights. *Negligence,* One owning or controlling real estate, Re-
pair. *Indemnity.*

When a lessor agrees by an express provision in a lease to make repairs to
the leased premises, or to those portions of the building over which he
retains control, such express agreement to make repairs should be con-
strued as an agreement to indemnify the lessee against any loss or
damage sustained by him as a result of the lessor's negligent or other-
wise wrongful failure to make required repairs or of his negligent mak-
ing of such repairs. [329-333]

In an action for indemnification from a lessor by a lessee which had been
obliged to settle a claim for personal injuries, there was sufficient
evidence to warrant a finding that the injuries were a reasonably fore-
seeable consequence of the lessor's failure to repair the roof. [333-334]

Where a lessor agreed by an express provision in a lease to make repairs to
the leased premises, an agreement to indemnify could be implied as
matter of law. [334]

In an action by a lessee seeking indemnification from a lessor for a pay-
ment the lessee had made to a customer who suffered personal injuries
on the leased property, there was sufficient evidence to warrant find-
ings that the injuries were not the result of any negligence on the part
of the lessee, that the lessee acted reasonably in settling the customer's
claim against it, and that the amount of the settlement was reasonable.
[334-335]

CIVIL ACTION commenced in the Superior Court on June
18, 1976.

The case was tried before *Young, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Louis Barsky* for the defendant.

*Joseph J. Walsh* for the plaintiff.

QUIRICO, J. This is an appeal by the defendant lessor (Yanofsky) from the denial of his motion for a directed verdict in an action brought against him in the Superior Court by the plaintiff lessee (A & P). A & P sought indemnification[1] from Yanofsky for a $20,000 payment it had made to one Marie E. Vahey, a customer of A & P, who suffered personal injuries when she slipped and fell on a puddle of water allegedly due to a leak in the roof of the store building leased to A & P by Yanofsky. The jury returned a verdict for A & P in the full amount sought. Yanofsky, both in his motion for directed verdict and on appeal, makes four contentions: (1) that the evidence was insufficient to warrant the jury in finding that A & P incurred damages as a result of Yanofsky's breach of any of the terms of the lease; (2) that the nature of the damages incurred here was neither foreseeable nor in the reasonable contemplation of the parties when the lease was made or renewed; (3) that the evidence was insufficient to support a finding of an express or an implied agreement for indemnification; and (4) that A & P is estopped from recovering for breach of lease terms because any damage it suffered was due to its own superseding negligence. For reasons stated below, we reject these contentions and affirm the judgment.

The following is a summary of the evidence introduced at the trial. The original lease between A & P and Yanofsky's predecessor was for a term of five years from 1950 with two successive options to renew, and it contained provisions under which the lessor both agreed to make "all outside repairs"[2] and was given a right of access "at reasonable

---

[1] In its complaint A & P sought indemnification or contribution, but the latter claim was waived at trial.

[2] Although most of the lease is a printed form apparently supplied by A & P, this clause is typed in and reads in part: "The lessor agrees to make all outside repairs and the lessee agrees to make all necessary incidental interior repairs during the term of this lease or any renewal thereof."

hours" for repair and inspection. The lease was subsequently renewed on four separate occasions, each for an additional term of five years. The repair clauses cited above were continued in force with each renewal, and were in effect at the time of the events giving rise to this action.

In December, 1974, the manager of the A & P store noticed a leak in the roof over the produce aisle of the store. Yanofsky was notified of the leak by a letter dated December 17, 1974, and he testified that after receiving the letter he attempted to communicate with a roofing contractor who had added a new roof to the building several years before, after earlier problems had arisen. He first tried to reach the contractor by telephone and when he did not succeed he wrote him a letter on December 19, 1974, asking him to make the necessary repairs. At various times before December 23 the manager and his staff mopped up the resulting water on the floor, placed shopping carriages around the area where the water was dripping, and put pails out to catch the water. On December 23, 1974, Marie E. Vahey, a shopper in the store, slipped on the water and fell, sustaining a fractured hip. No repairs had been performed on the roof up to that time.

Mrs. Vahey retained counsel, who undertook negotiations with A & P for the settlement of her claim against them, with the result that on September 25, 1975, Mrs. Vahey executed a release of all claims against A & P in return for $20,000. The release expressly reserved all rights of action against parties other than A & P.[3] Before settling with Mrs. Vahey, A & P made demand upon Yanofsky to assume the defense of the claim, and notified him of the terms of the prospective settlement.

At the close of the plaintiff's case and again at the close of all the evidence Yanofsky moved for a directed verdict, which was denied. In his instruction to the jurors the judge stated that if they found that A & P had acted reasonably in

---

[3] An action was filed by Mrs. Vahey against Yanofsky. It was joined for trial with the present action but it was settled in mid-trial.

settling Mrs. Vahey's claim for $20,000, it could recover that amount from Yanofsky on either of two theories: (1) if they found that an implied agreement for indemnification of the A & P by Yanofsky resulted from the lease and that a claim such as that by Mrs. Vahey "was reasonably foreseeable by the [parties] when they entered into their [lease, and if the jury found] that they mutually contemplated that something of this sort might happen if the roof were not kept in repair . . ."; or (2) if they found under the common law that Yanofsky was negligent as to the leaky roof but that A & P was not negligent. The judge further instructed the jury that if they found that negligence on the part of A & P had contributed to Mrs. Vahey's injuries, A & P could not recover. Counsel for Yanofsky did not object to these instructions, but seeks to attack both grounds of liability as they apply to him by means of appeal from the denial of his motion for directed verdict.

1. The defendant's principal argument is that an agreement by a lessor to make repairs on the leased premises may not give rise to an implied agreement to indemnify the lessee against losses arising from the failure to repair, beyond the cost of repairs the lessee was himself thereby forced to make. The defendant relies on statements in several of our recent decisions which summarized the earlier case law of this Commonwealth.

In *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 513 (1974), we stated: "The ordinary agreement for consideration by which a landlord is to make repairs is construed as an agreement to repair on notice. *Conahan* v. *Fisher*, 233 Mass. 234 (1919). *Fiorntino* v. *Mason*, 233 Mass. 451 (1919). Failure to repair under such an agreement gives rise only to a contract action for the cost of the repair. Tort liability will exist, however, for negligently made repairs. In the absence of such a specific agreement to repair, no agreement will be implied from the mere letting of the premises, and any repairs made will be treated as gratuitous. *Bergeron* v. *Forest*, 233 Mass. 392 (1919)." We went on to state, however, that "[w]e might well be inclined toward a recon-

sideration of the rules of tort liability of lessors under a tenancy at will if the decision in this case required it." *Id.* at 514.

In *Markarian* v. *Simonian*, 373 Mass. 669, 672 (1977), we stated that "[i]t has been well settled in this Commonwealth that in the absence of an agreement imposing a duty on the landlord to keep the premises in a condition of safety, the landlord is not liable in tort to a tenant for injuries suffered by a tenant for a failure to execute such repairs. *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 513 (1974). *Conahan* v. *Fisher*, 233 Mass. 234, 237-238 (1919)." In our decision in *Markarian,* we held that such an agreement could be implied from the circumstances, if protection from injury or loss were within the purpose of the agreement to repair, and if the damage suffered was a type of harm foreseeable from the failure to repair. We further stated that a case reaching the opposite result on similar facts, *Chelefou* v. *Springfield Inst. for Sav.*, 297 Mass. 236 (1937), was "of dubious validity." *Markarian, supra* at 675.

Most recently, in *Young* v. *Garwacki, ante* 162, 166 (1980), we commented upon the above-quoted language from *DiMarzo* by saying, "After seven years of reconsideration and reform, little remains of this obsolete machinery of the common law." We there noted that part of this evolution had been accomplished by statute, and cited among others G. L. c. 186, § 19 (St. 1972, c. 665), which provides in part as follows: "A landlord or lessor of any real estate [with exceptions not here material] shall, within a reasonable time following receipt of a written notice from a tenant forwarded by registered or certified mail of an unsafe condition, not caused by the tenant . . . [or certain others], exercise reasonable care to correct the unsafe condition described in said notice except that such notice need not be given for unsafe conditions in that portion of the premises not under control of the tenant. The tenant or any person rightfully on said premises injured as a result of the failure to correct said unsafe condition within a reasonable time shall have a right of action in tort against the landlord or lessor for damages."

This statute has not been interpreted in any detail by a decision of this court. See *Crowell* v. *McCaffrey*, 377 Mass. 443, 447 (1979); *King* v. *G & M Realty Corp.*, 373 Mass. 658, 663 n.9 (1977). It was not relied upon by the plaintiff in the present action. In its brief A & P alleges that Yanofsky violated the section and that this violation constituted evidence of negligence, but A & P neither argued such a contention nor introduced evidence on this point at trial. Therefore, we need not construe the statute to apply it to the present case. However, we have previously noted its language to be indicative of a legislative policy consistent with decisions of this court which modify the common law rights and liabilities of lessors and lessees. *Crowell, supra. King, supra.* In this context, it is also appropriate to note that the facts of the present case arguably give rise to a cause of action under the statute in favor of Mrs. Vahey against Yanofsky. Although no evidence was introduced that A & P notified Yanofsky of the leak by certified or registered mail, arguably no such notice was required, because under the lease the lessor was bound "to make all outside repairs," which would include repairs to the roof, and it would therefore follow that the roof was a "portion of the premises not under control of the tenant," as the quoted words are used in G. L. c. 186, § 19. In any event, it is uncontested that the lessor received actual notice of the needed repair, rendering further notice superfluous as a matter of common sense. We think it clear, moreover, that a lessee such as A & P that is "injured" by virtue of being reasonably obliged to settle a claim for personal injuries which were caused by the lessor's failure to repair an unsafe condition within a reasonable time, would have a cause of action against the lessor under the statute to recover such amounts reasonably paid.

We believe that, apart from G. L. c. 186, § 19, when a lessor agrees by an express provision in a lease to make repairs to the leased premises, or to those portions of the building in which the leased premises are located and over which he retains control, such express agreement to make repairs should be construed as an agreement to indemnify

the lessee against any loss or damage sustained by him as a result of the lessor's negligent or otherwise wrongful failure to make required repairs or of his negligent making of such repairs. The former rule, stated in *Fiorntino* v. *Mason,* 233 Mass. 451, 453 (1919), that absent a special agreement, a lessee could recover only for the cost of repairs which the lessee was himself forced to undertake, was based upon the concept that a lease was to be considered as purely a convey-ance of property. The rule is no longer appropriate, in light of the decline of this concept. See *Young* v. *Garwacki, supra* at 168, and cases cited. The new rule which we de-clare is consistent with the law in an increasing number of the jurisdictions which have considered the point. Restate-ment (Second) of Property, Landlord & Tenant §§ 17.4, 17.5, Comment a (1977). See *id.,* §§ 17.3, 17.5, at Com-ment f and Illustration 8, § 17.6. Moreover, it is a logical extension of our holdings in *Crowell* v. *McCaffrey,* 377 Mass. 443 (1979), and *Lindsey* v. *Massios,* 372 Mass. 79 (1977).

We adopt the reasoning of the Restatement (Second) of Property, Landlord & Tenant §§ 17.4 and 17.5 (1977),[4] in holding that liability for indemnification by implied agree-

---

[4] These sections read as follows: "§ 17.4 Parts of Leased Property Re-tained in Landlord's Control Necessary to Safe Use of Part Leased. A landlord who leases a part of his property and retains in his own control any other part necessary to the safe use of the leased part, is subject to lia-bility to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a danger-ous condition upon that part of the property retained in the landlord's control, if the landlord by the exercise of reasonable care could have: (1) discovered the condition and the risk involved; and (2) made the condition safe."

"§ 17.5 Where Landlord Contracts to Repair. A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a condition of disrepair existing before or arising after the tenant has taken possession if: (1) the landlord, as such, has contracted by a promise in the lease or other-wise to keep the leased property in repair; (2) the disrepair creates an unreasonable risk to persons upon the leased property which the perform-ance of the landlord's agreement would have prevented; and (3) the landlord fails to exercise reasonable care to perform his contract."

ment will be presumed from the fact of an agreement to make repairs to leased premises (§ 17.5, see also Restatement [Second] of Torts § 357 [1965]).

2. The next question for our consideration is whether the damages being sought by A & P in this case are such that it can be said that they were sufficiently foreseeable by the parties when the indemnification agreement was implied to permit a holding that they are included in its scope. The defendant argues that this issue should not have gone to the jury because personal injuries are never within the contemplation of parties to a contract for repair. We disagree.

In the present case, the lessor knew at the times he renewed the lease that the lessee operated a store frequented by members of the general public, old and young, feeble and firm, who would be bent upon the task of shopping for groceries and other items. He had shopped at the store himself on occasion. He knew that if the roof leaked, as it did on several occasions prior to the incident at issue, water was highly likely to fall on the floor of the leased store. He knew, or should have known as a matter of common sense, that such water posed a potential hazard of personal injury to unwary shoppers, or to store personnel. He could not reasonably expect to rely solely on extraordinary efforts by store employees to deflect the naturally foreseeable consequences of a failure to repair the leaky roof. It was plainly foreseeable that more mischief could result from such a failure to repair than the mere inconvenience to the store manager of having to call the roofer himself. We hold that there was sufficient evidence from which the jury could find that the injury to Mrs. Vahey was a reasonably foreseeable result of Yanofsky's failure to repair the roof. *Markarian* v. *Simonian,* 373 Mass. 669, 675 (1977).

The jury by their verdict resolved in favor of A & P the factual dispute whether A & P had itself acted negligently with regard to Mrs. Vahey (see part 4 of this opinion, *infra*). However, had they concluded otherwise on that issue, A & P would properly have been barred from recovery under the contract as well as under the negligence theory of liability

for indemnification. *Stewart* v. *Roy Bros.*, 358 Mass. 446, 458 (1970). An implied contract of indemnity such as involved here will not be considered as indemnifying a lessee against his own negligence. Only express language can create such indemnity. *Laskowski* v. *Manning*, 325 Mass. 393, 398-399 (1950). As the question of contribution was waived by A & P at trial, we do not further consider that issue here.

3. The next contention of the defendant is that the evidence was insufficient to support a finding by the jury of an express or an implied agreement by the lessor to indemnify the lessee. However, we have held, above, that such an agreement to indemnify may be implied as matter of law from an agreement to repair, contained in the express terms of a lease. The interpretation of the terms of an unambiguous written lease is a matter of law for the court. *Sands* v. *Arruda*, 359 Mass. 591, 595 (1971). *Tri-City Concrete Co.* v. *A.L.A. Constr. Co.*, 343 Mass. 425, 427 (1962). There is no ambiguity in the agreement to repair contained on the face of the present lease. Thus no factual question exists concerning the implied agreement to indemnify. Cf. *Liberty Mut. Ins. Co.* v. *Westerlind*, 374 Mass. 524, 526 (1978); *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 76-78 (1976); *Stewart* v. *Roy Bros.*, 358 Mass. 446, 458 (1970). The judge's instructions to the jury which permitted them to find such an implied agreement were consistent with the law as it then stood, and worked no prejudice to the defendant. We find no reversible error in them.

4. The defendant's final contention is that A & P should be estopped from recovering for breach of the lease terms because the injury to Mrs. Vahey and the resulting loss to A & P were under any view of the facts attributable to A & P's own superseding negligence in failing to take adequate precautions to mop up the water. Yanofsky points to the duty of reasonable care which A & P owed to Mrs. Vahey as its business invitee, in the first instance. We think that there was sufficient evidence on this point also. There was uncontradicted evidence that Yanofsky had been notified of the leak, and failed to have it repaired before the day of the

accident. There was also some evidence that A & P had taken various precautions prior to, but not on the day of, the accident. Additional evidence was introduced concerning whether the tiles on the store floor were uneven or in need of repair at the time in question. The judge clearly and repeatedly instructed the jury that, if they found negligence on the part of A & P, the latter could not recover in indemnification. The judge also properly instructed the jury that in order to award recovery to A & P it must find that A & P acted reasonably in settling Mrs. Vahey's claim against it, and that the amount of the settlement was reasonable. The jury by their verdict settled these factual disputes, and we will not permit them to be reopened.

*Judgment affirmed.*