Curran, Dennis J., J.
The plaintiff Nana Ama As-iamah, by her father and next friend Kwadwo Asiamah (“Nana" or “plaintiff) brought this suit for damages against the defendants Bennet and Georgina Amankwah (“Georgina”) (collectively, ’’defendants”) alleging: (1) negligent failure to maintain a window; and (2) negligent supervision. Pursuant to Mass.R.Civ.P. 56(b), the defendants now move for summary judgment. For the following reasons, the motion for sum-maiyjudgment is ALLOWED.

BACKGROUND

At all times relevant to this dispute, the defendants owned a triple-decker home at 14 Ingalls Street in Worcester, where they occupied the top floor with two of their children. Their married daughter lived with her family in the second-floor apartment. Members of both families moved freely between the two apartments.
On or about June 1, 2005, Georgina contacted Nana’s mother, Mary Annor (“Mary”) and asked her for a ride to Sam’s Club. Mary agreed and arrived with her three minor children, Nana, Ama, and Yaw. Nana and Ama stayed at 14 Ingalls Street while Mary and Georgina went shopping. When Mary and Georgina left, the house was occupied by Georgina’s minor children, Nathan and Emmanuel, Georgina’s adult daughter, Grace, and Georgina’s adult son-in-law, Seidu Mah-ana (“Seidu”), and his two minor children, Hamid and Godfred.
Grace was on the third floor, and Seidu was on the second. Nana, Ama, and Nathan played hide-and-seek on the second floor. It is undisputed that no one was directly supervising the children at this time. During the course of the game, Nana hid behind curtains covering a window. She sat on the window sill and subsequently fell backwards through the window and window screen. Nana and the screen landed on the driveway. As a result of the fall, Nana sustained injuries.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). Summaiyjudgment is appropriate where a party has no reasonable expectation of proving an essential element of her case at trial. Flesner v. Technical Communications Corp., 410 Mass. 804, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
To prevail in a negligence action, a plaintiff must be able to establish by a preponderance of the evidence that: (1) the defendants breached the duty to use reasonable care; (2) the plaintiff suffered an actual loss; and (3) the defendants’ negligence caused the plaintiffs loss. Glidden v. Maglio, 430 Mass. 694, 696 (2000). Moreover, summaiyjudgment is rare in negligence cases, which often turn on factual disputes. Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). Regardless, summaiyjudgment may be appropriate if “no rational view of the evidence permits a finding of negligence.” Roderick v. Brandy Hill Co., 36 Mass.App.Ct. at 949. Of course, the fact that an accident occurred is not evidence of negligence. Wilson v. Honeywell, Inc., 409 Mass. 803, 810 (1991), and cases cited.

Count One: Defective Window or Screen

The plaintiff alleges that the defendants negligently and carelessly maintained the second-floor window and screen in a manner that rendered the premises dangerous and unsafe for children. She also claims that the window was defective because it lacked a lock that would prevent it from opening and that a lock would have prevented her fall. Finally, the plaintiff asserts that the window was inherently defective because its placement was too low to the ground, making the sill accessible to children.
At common law, a landowner owes a duty of care to all persons lawfully on the premises.[3] O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000), citing Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). Included in this duty is the duty to maintain property in a reasonably safe condition after considering “the likelihood of injuiy to others, the seriousness of the injuiy, and the burden of avoiding the risk” and the duty “to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware.” Id., and cases cited.
Here, the plaintiff alleges that the defendants were negligent for failing to install a lock on the window that would prevent it from opening and that the window screen was defectively installed and maintained. It has long been accepted that the purpose of a window screen is to keep insects out while allowing ventilation, not to keep children inside. Chelefon v. Springfield Institution for Savings, 297 Mass. 236, 241 (1937). See *651 also Pineda v. Ennabe, 61 Cal.App.4th 1403 (1998) (no duty to ensure that children do not fall out of ordinary second-floor windows); Lamkin v. Towner, 138 Ill.2d 510, 563 (1990) (no duty to install screens strong enough to support the weight of a child).
The ordinary purpose of a window is to provide light and ventilation. The ordinary purpose of a screen is to keep insects out of the building. There is no evidence that the screen here was installed for any other purpose. Compare Markarian v. Simonian, 373 Mass. 669 (1977) (landlord liable where she repaired window for safety reasons and two-year-old fell due to defective screen installation). The summary judgment record does not establish the distance between the window sill and the floor. Regardless, while the low placement of a sill might make it more likely that defective installation could harm a child, the mere fact that a sill is low is not a defect. See Id. at 675.
This court concludes that the law does not impose a duty on landowners to prevent windows from opening.[4] Even if the window in question were equipped with a lock, such locks are removable and do not prevent a person from opening a window from the inside. The plaintiff has not produced evidence that the screen was maintained defectively. On the contrary, the evidence indicates that the screen popped free from the window only after it encountered the full force of the plaintiffs weight. Therefore, the court can find no duty on the part of the defendants to prevent the injury that occurred here.
Because there was no duty, summary judgment must be entered for the defendants. It is not necessary to address the defendants’ contention that the danger was open and obvious.

Count II: Negligent Failure to Supervise a Child

Count two alleges that “Georgina and her family” were negligent for failing to supervise Nana while she was in their care.[5] The parties agree that, although Grace and Seidu were home at the time of the incident, they were engaged in a varieiy of functions other than watching the children.
The single most important function of a baby-sitter is “maintaining proper supervision and a safe environment for children.” Commerce Insurance Company v. Finnell, 41 Mass.App.Ct. 701, 703, quoting Partner’s Insurance Company v. Wiechnick, 166 Ariz. 266 (1990). A person who has been entrusted with and accepted the responsibility of supervising a child owes a duty of care to that child. Anderson v. Mitts, 87 Ark.App. 19, 24-25 (2004). This entrustment “envisions an actual transference of supervisory responsibility from the parent to another person.” Bradley v. Welch, 94 Ark.App. 171, 180 (2006).
Here, there is a genuine issue regarding whether Grace or Seidu, or both, accepted responsibility for taking care of Nana while her mother was gone. However, it is undisputed that Georgina did not accept this responsibility. It is also undisputed that Mary was aware that Georgina was not watching Nana, as the two were shopping together. Therefore, Mary cannot be said to have entrusted Georgina with the care of her children. Georgina cannot be held liable for the alleged torts of her adult children. See generally Alioto v. Marnell 402 Mass. 36, 38 (1988). Therefore, summary judgment must be entered for the defendant.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment is ALLOWED.

Although there is a factual dispute regarding whether Nana’s mother left her there at her own volition or at the direction of Georgina, it is clear that Nana was on the premises with the knowledge and express or implied assent of Georgina. See Mounsey v. Ellard, 363 Mass. 693 (1973); Pires v. Quick, 366 Mass. 313, 315 (1974).

Indeed, in the event of a fire, the presence of an open window can save lives.

The plaintiff also claims that Mary left the children at 14 Ingalls Street based on Georgina’s representation that they would be supervised. However, neither the complaint nor any of the affidavits allege that Georgina made any representations to the plaintiff Nana. If Nana was not aware of the alleged representations, she could not have relied upon them to her detriment.