## JEROME SATURNINI v. SAM ROSENBLUM.[1]

April 6, 1944.

No. 33,687.

*Maugridge S. Robb,* for appellant.
*F. L. Palarine,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by a father, as special administrator, for the wrongful death of his minor son aged two years, one month. The jury re-

[1] Reported in 14 N. W. (2d) 108.

turned a verdict in favor of plaintiff for $2,161. Defendant appeals from an order denying his alternative motion for judgment or a new trial.

The facts are as follows: Defendant is the owner of a four-flat building at 159 North St. Albans street, St. Paul. One of the second-floor apartments was rented by the parents of decedent shortly prior to April 15, 1942, and possession was taken on that day. There are three windows in the front wall of the front room of said apartment, the center one of which is here involved. In front of the three windows there is a sill, extending the breadth thereof, about six inches wide and about 28 inches above the floor. A radiator is set against the wall to one side of the windows, the valve of which is close to the edge of the sill.

Plaintiff's family at the time, in addition to himself, consisted of his wife and three children—Tommy, aged four years, Jerry, the decedent, aged two years and one month, and an infant, born in April 1942.

On May 1, the storm windows were removed and the screens put on the windows. Mrs. Saturnini noticed that the wire mesh on the front center screen was loosened from its frame at the side and bottom, that it was rusted and corroded, and that it did not reach to the wooden frame of the screen. She made complaint to defendant. Her testimony in this respect is as follows:

"I called up Mrs. Rosenblum [wife of defendant and active in looking after premises] and told her she would have to fix those screens because they were dangerous if the boys would crawl on the window sill and maybe lean against the window screen and fall out."

Again, about May 15, because the screens were still not repaired, Mrs. Saturnini spoke to Mrs. Rosenblum:

"I told her they would have to be fixed because the children would fall out. She said they would be fixed right away."

Plaintiff also had a conversation with defendant about this time. He testified:

"I told him the screens weren't in very good condition and possibility of the children getting up on the front ledges especially and falling through there, and we were worried about that.

"Q. What did you tell him you wanted done about that?

"A. To be fixed up and new netting if possible.

"Q. What did he say?

"A. He said he would take care of it."

He also testified that he had no other talk with Mr. or Mrs. Rosenblum, but that he talked to Frank, the caretaker, several times.

After these conversations, the caretaker of the building attempted to tack the loose screen of the center window to its frame. Almost immediately thereafter the wire mesh again separated from the wooden frame of the screen, both on the side and bottom, as before. Complaint was again made by Mrs. Saturnini to defendant's wife. At that time rent for the apartment was due, and Mrs. Saturnini threatened to withhold payment thereof until proper repair of the screen had been made. On this occasion Mrs. Saturnini testified:

"A. I told her [Mrs. Rosenblum] the screen wasn't fixed properly and I wanted a new netting put on it.

"Q. When did you tell her that?

"A. A few days after Frank had put the window up.

"Q. Anything else you told her?

"A. I told her that it was dangerous, that the children might crawl up on the window sill and fall out.

"Q. You expected your children to crawl up on the window sill?

"A. You expect most anything.

"Q. Do you expect a little child two years old, without a chair or anything, to climb up on a window sill as high as this table?

"A. Well, you have to expect things in order to prevent things.

\* \* \* \* \*

"Q. All you asked them to do was to fix the screen?

"A. To put new netting on the screens, yes."

Mrs. Rosenblum again promised that the screen would be fixed immediately. During the latter part of June 1942, the caretaker

again undertook to repair the screen. This time he repeated the prior process of tacking the old wire mesh to the frame, except that he first tacked a small piece of wood to the frame so that the shortened wire mesh would meet the same, and then placed a light piece of wood molding over the wire mesh and tacked it down. Again this makeshift repair failed to hold, and shortly thereafter the wire mesh became separated from the bottom and side of the frame. Thereafter the screen remained untouched, and on Sunday, July 12, 1942, the accident took place which resulted in the death of young Jerry.

The testimony relative thereto is substantially as follows: Mrs. Saturnini was preparing dinner. The day was warm, and for a moment she had taken Tommy and Jerry to play outside in the back yard while she sat on the rear steps of the building. Later she went up to the apartment to see if the dinner was ready, leaving Jerry with a neighbor. Subsequently she went back and got the children, taking Jerry upstairs with her. Tommy ran around to the front and up the front stairs, while Jerry went up the rear stairs with his mother. While Tommy was in the front room, Jerry left his mother to go in and play with Tommy. However, Tommy immediately ran down the front stairs again to play with some boys on the outside. Almost immediately thereafter plaintiff, at the request of his wife, went into the front room to get Jerry and to call Tommy for dinner. Jerry was not there. Plaintiff looked out the screen window here in question and saw that there was an L-shaped opening on the left-hand side thereof extending almost to the top of the screen and almost all the way across the bottom thereof. He called to his wife that Jerry had fallen through the window. He rushed downstairs and found Jerry directly below the window in the arms of a man who had picked him up. He was unconscious and died later the same day.

This action is for damages based upon the negligence or failure of defendant to fix the screen in accordance with his express promise. At the close of the testimony the court's instruction to the jury included the following:

"As to the duties of a landlord in cases such as we are here considering, where the landlord agrees to repair and keep in repair the leased premises, if he is negligent in making or failing to make the repairs agreed upon and such failure results in an unsafe condition of the premises, he is liable for damages caused thereby. That is the general rule. But the landlord is in no sense an insurer of the safety of his leased property, that is, in the absence of a contract between the parties, an agreement between the parties, there is no duty on the part of the landlord to fix a screen on a window suitable to keep children from falling out, and there was no duty in this case. The duty was to repair the screen in such a way as not to make it hazardous or dangerous for children."

The making of the agreement to repair, and the provisions thereof, were submitted as questions for the jury's determination. Instructions likewise were given on the questions of proximate cause and the contributory negligence of the parents, and these issues were likewise submitted to the jury.

At the close of the charge, counsel for defendant stated:

"I will state this: So far as the statement of the abstract of the law is concerned, I have never heard a more masterful charge in my 25 years of practice, * * * the only exceptions we take are * * * that the evidence did not warrant the application of the laws which were so aptly expressed, for the reason we don't believe the evidence would justify the finding that there was a contract for a new mesh or that the contract to repair was in any manner breached or not performed, or that * * * there was any question whatever to entitle the jury to find * * * defendant was negligent for breach of contractual duties or otherwise; and we also feel that the evidence was conclusive that there was no causal connection, as that is known, between the death and whatever was or was not done with the screen."

On appeal, defendant in substance contends (1) that there is no evidence of an agreement to furnish screen of sufficient strength to prevent the decedent from falling; (2) that the failure to provide a

new wire mesh or adequately to repair the screen was not the proximate cause of the accident; and (3) that the negligence of the parents of decedent constituted an intervening and independent cause of the accident so as to relieve defendant of liability therefor.

■ We believe the evidence amply sustains the jury's finding that a contract existed between defendant and the Saturninis to make suitable repairs to the screen to remedy its defective condition and to remove, partially at least, the danger to the children of falling through the same. Ordinarily, there is no duty on the part of a landlord to make repairs unless he expressly agrees to do so. If there is such an express agreement, however, then liability for damages resulting from his failure to perform such agreement follows as a matter of course. The principle is stated in Restatement, Torts, § 357, thus:

"A lessor of land is subject to liability for * * * a condition of disrepair existing before or arising after the lessee has taken possession, if (a) the lessor * * * has agreed * * * to keep * * * in repair, and (b) the disrepair creates an unreasonable risk * * * which the performance of the lessor's agreement would have prevented."

This is in accordance with the Minnesota doctrine as stated in 4 Dunnell, Supp. § 5369, note 40:

"The rule in this state [Minnesota] that a covenant to repair imposes on the lessor a liability in tort to the lessee and others rightfully on the premises, is contrary to the prevailing rule in this country and England. It is sustained, however, by the Restatement of the Law of Torts by the American Law Institute."

There is ample evidence here that defendant had agreed to repair the screen in question in a manner which would at least lessen the danger to the children of falling through the same. Repeatedly plaintiff and his wife brought to his attention the fact that the screen in its condition of disrepair greatly increased this danger to the children, and there is substantial evidence that defendant, in the light of such knowledge, had agreed to place new wire mesh in

the frame, or at least to repair it so that the wire mesh would not tear loose from the frame, to the danger of the children. The evidence is likewise clear that defendant negligently failed to repair the screen as he had agreed. The old wire mesh which had rusted and corroded was not replaced, nor was it fastened to the frame in such a way so as not to tear loose therefrom. The evidence is undisputed that the wooden frame did not give way, and the only conclusion that can be drawn from this is that the child must have fallen through the large hole made by the separation of the wire mesh from the wooden frame. Under such circumstances, the court properly submitted to the jury for its determination the question of the agreement and defendant's performance thereof. We find no error in this. Shaw v. Butterworth, 327 Mo. 622, 38 S. W. (2d) 57; Ross v. Haner (Tex. Comm. App.) 258 S. W. 1036; 4 Dunnell, Dig. & Supp. § 5369.

■ Defendant asserts that he was not an insurer of the safety of the children; that the only screen which he was required to place on the premises was one adequate to prevent the entry of insects and flies; and hence that the failure to repair the screen could not be regarded as the proximate cause of the accident. While it is true that defendant was not an insurer of the safety of the children, as the court instructed the jury, and that under ordinary circumstances a landlord may not be required to furnish a screen strong enough under all circumstances to prevent a person from falling through it, we are not concerned with such general principles here. We are concerned only with the agreement to repair made by the parties thereto. Accepting the testimony of plaintiff and his wife for its full worth, as we must here, that agreement was to repair or replace a rotted and corroded wire screen mesh, which had become separated from its wooden frame, in such a way that it would not again separate therefrom and thereby greatly increase the danger of the children falling through it.

We need not speculate as to whether a solid new wire mesh, or an adequate repair job to the old mesh, would have, under all circumstances, prevented the accident here in question. Perhaps it

would have, for it would seem that only slight resistance would have prevented the child from falling through. Had it still been inadequate, at least defendant would have performed his part of the agreement and thereby eliminated liability on his part. However, he did not perform, and his failure to perform made it proper for the jury to determine whether or not such failure was the proximate cause of the accident. One who is negligent is liable for any injury naturally and proximately resulting from his act or omission if he ought reasonably to have anticipated that some form of injury was likely to result. This is to be determined by the jury "in the exercise of practical common sense, rather than by the application of abstract definitions." Here there was ample evidence to justify submission of the question of proximate cause to the jury, and ample evidence to sustain its finding that defendant's negligence was the proximate cause of the accident and attendant damages. 4 Dunnell, Dig. & Supp. §§ 7000 and 7002.

▮ Likewise, the question of contributory negligence on the part of the parents was possibly for the jury's determination, although a careful search of the record fails to disclose any substantial evidence thereof. They repeatedly requested adequate repairs to the screen for the specific purpose of protecting their children. Again and again defendant's attention was directed to the danger of their falling through the defective screen. They required the glass windows to be closed on most occasions for this same reason. Their watch over the children seemed constant and painstaking. There is no evidence that they permitted the children to play about the windows or that plaintiff himself may have placed decedent in a position of peril, as defendant suggests. The window sill in question is only some 28 inches in height and extends to a point near a radiator valve, which might readily have enabled the child to crawl up on the sill. The agility of a child of Jerry's age is well known. There is nothing whatever in the record to suggest that plaintiff had any part in placing him on the window sill or that he was at any time aware that the child had crawled thereon. In any event, the questions of proximate cause and of plaintiff's con-

tributory negligence were properly submitted to the jury, and its finding in this respect constitutes a final determination. of the matter. Certainly there is adequate evidence to sustain the same.

The order is affirmed.