115 Cal.Rptr.2d 299 (2002)
95 Cal.App.4th 137
Dejoure WHITE, a Minor, etc., Plaintiff and Appellant,
v.
Wilfredo CONTRERAS et al., Defendants and Respondents.
No. B150383.
Court of Appeal, Second District, Division Five.
January 10, 2002.
Rehearing Denied January 30, 2002.
Review Denied May 1, 2002.[*]
*301 Homampour & Associates and Arash Homampour, Beverly Hills, for Plaintiff and Appellant.
Harrington, Foxx, Dubrow & Canter, Thomas O. Russell III, Angela Lui Walsh, and Kelly A. Ward, Los Angeles, for Defendants and Respondents.
*300 MOSK, J.
Plaintiff DeJoure White (plaintiff), through his father Derrick White, appeals from the summary judgment entered in favor of defendants and respondents Wilfredo Contreras (Contreras) and Con Pro Serve Property Management Service.[1] For the reasons set forth below, we reluctantly follow the authorities that hold that a landlord owes no duty to install screens or other protective devices to protect against a child tenant falling out of a window in the leased unit. We hold, however, that a landlord who covenants or undertakes to replace a window screen, but fails to do so, may be liable to the child tenant who falls out of the unscreened window. Here, the plaintiff has raised triable issues of fact as to the issues concerning the covenant or undertaking and legal cause, and we therefore reverse the summary judgment.

*302 FACTS AND PROCEDURAL HISTORY[2]
In June, 2000, three-year-old DeJoure White fell more than 25 feet to the ground from the bedroom window of the third-story apartment in the City of Los Angeles he shared with his father, Derrick White, and his mother, Tasha Norris. As a result, plaintiff sustained serious injuries that left him permanently physically and mentally disabled.
The bedroom window through which plaintiff fell was 95 inches wide and 35 inches high. It included a fixed pane of glass in the center, flanked by openings on either side that were covered by sliding windowpanes. The opening on the left had a window screen in place, but the opening on the right did not. The windowsill was 46 inches above the floor. Plaintiffs bed was placed with its headboard directly to the left of the window. A dresser nearly 30 inches high was placed along the wall 16 inches from the right side of the window. A declarant stated that "[i]tems on the dresser caused the distance between the top of the dresser and the sill to be closer in certain areas."
The apartment in which plaintiffs family resided was owned by defendant landlord Wilfredo Contreras, who bought the building in December 1999. After Contreras purchased the building, he promulgated "rules" that expressly provided that they were part of the residential leases. Plaintiffs mother signed the document that set forth the rules. No written lease is in evidence. The rules state that the tenants could not make repairs or alterations without the landlord's consent. The landlord required that all repairs be performed by either him or his manager. Tenants who violated the rules risked termination of their leases. The landlord declared that "as part of my duties as owner, I have always performed the routine maintenance and repairs to the apartment building."
Plaintiffs father told landlord that the screen was needed because the father believed his child, plaintiff, could fall from the unscreened window opening. The landlord told plaintiffs father in December 1999 that the landlord would replace the missing screen. Between January 2000 and June 2000, the landlord came to the apartment five times but never installed a screen. When the father asked when the landlord would do so, the landlord replied, "Don't worry about it, we're gonna [sic] do it...." The father believed that the landlord's rules precluded him from replacing the screen himself. The landlord replaced missing screens in other units in the building and also knew that other children lived in the building.
On the day of plaintiffs fall, his mother put him down for his nap in the bedroom around noon and then did housework. Because it was a hot day, she opened both sides of the bedroom window. When the father came home shortly before 3:00 p.m. that day, the mother was sweeping the floor about eight feet outside the bedroom. Plaintiffs father did not see plaintiff in the bedroom, but noticed the window blinds were moving. He looked out the window and saw his son on the ground below.
Plaintiffs biomechanical expert said in a declaration that it was "highly unlikely" that the 41.5-inch child had been able to hoist himself off the floor and through the 46-inch-high window opening. Instead, the expert believed, plaintiff climbed on top of the nearby dresser and somehow fell from there. After conducting a variety of tests on sample window screens, the expert concluded that a "standard replacement" *303 window screen would have been strong enough to keep plaintiff from falling through the open window. The expert also believed that such a screen would have been an effective barrier if plaintiff had either seen or touched it. Another expert, a civil engineer, submitted a declaration stating that the unprotected window rendered the apartment "manifestly unsafe."
Plaintiff's mother knew that plaintiff was an active child who climbed on tables and chairs. In February and March of 2000, the dresser was not by the window but was instead alongside another wall next to the child's bed. The mother knew plaintiff had at times been able to climb from the bed to the top of the dresser, and she had scolded or spanked him when he did so. The mother said she moved the dresser next to the window in April 2000 because the cable television line was not long enough, and she did not desire to purchase a longer cable. According to the father, the dresser was moved next to the window because it was used as a stand for the TV set, and the only working electrical outlet was in that spot. The father said that the dresser drawers would have allowed plaintiff to climb on top of the dresser. The mother had told the father that plaintiff was capable of opening the dresser drawers. When the father found plaintiff after the accident, he noticed that the dresser drawers were open.
After the fall, plaintiff, with his father as his guardian ad litem, filed suit, contending the bedroom window had negligently been left "uncovered." Plaintiffs father, who discovered plaintiff after he fell, also sued defendants in a cause of action for negligent infliction of emotional distress. The father later voluntarily dismissed this cause of action. Defendants moved for summary judgment to challenge plaintiffs contention that the landlord negligently failed to replace a missing window screen that would have prevented plaintiffs fall. Relying primarily on two decisionsAmos v. Alpha Property Management (1999) 73 Cal.App.4th 895, 87 Cal.Rptr.2d 34 and Pineda v. Ennabe (1998) 61 Cal.App.4th 1403, 72 Cal.Rptr.2d 206defendants argued that (1) they did not have a duty to install window screens because as a matter of law screens are not intended for safety purposes; and (2) they did not owe plaintiff a duty to install a screen or prevent the accident and were not responsible for the accident because it occurred through his parents' carelessness. The trial court ruled that as a matter of law, defendants owed no duty or obligation to plaintiff to install the screen and entered judgment against both plaintiff and his father.

DISCUSSION

I. Standard of Review
Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc, § 437c, subd. (c).) In reviewing an order granting summary judgment, the appellate court emulates the trial court in determining whether, as a matter of law, the motion for summary judgment should have been granted. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 843, 107 Cal.Rptr.2d 841, 24 P.3d 493.) Nevertheless, the California Supreme Court has warned that the summary judgment "procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact." (Eagle Oil & Ref. Co. v. Prentice (1942) 19 Cal.2d 553, *304 556, 122 P.2d 264.) Accordingly, this court, as should the trial court, strictly construes the evidence against the moving party and liberally in favor of the opposing party. Any doubts regarding the propriety of summary judgment should be resolved in favor of the opposing party. (Ibid.; Kulesa v. Castleberry (1996) 47 Cal. App.4th 103, 111-112, 54 Cal.Rptr.2d 669.)
A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at pp. 849, 853, 107 Cal.Rptr.2d 841, 24 P.3d 493.) If the plaintiff meets that burden, summary judgment must be denied. (Code Civ. Proc., § 437c, subd. (c).)

II. Duty
In a negligence case, the issue of whether a defendant owes a duty of care to the plaintiff is a question of law. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 57, 77 Cal.Rptr.2d 709, 960 P.2d 513; Richards v. Stanley (1954) 43 Cal.2d 60, 67, 271 P.2d 23 [although "it would be difficult to say that reasonable minds could not differ as to whether or not a duty should be imposed, the question was one of law for the court, and not for the jury, to decide"]; 6 Witkin, Summary of Cal. Law (9th ed. 1987) Torts, § 748, p. 83.) Determining whether there is a legal duty in a specific case is subject to a number of variables. (Ballard v. Uribe (1986) 41 Cal.3d 564, 572, fn. 6, 224 Cal.Rptr. 664, 715 P.2d 624; Raymond v. Paradise Unified School Dist. (1963) 218 Cal.App.2d 1, 6, 31 Cal.Rptr. 847.) The court must determine on the evidence whether there exists a relationship between the parties such that society should impose on the defendant an obligation to protect the plaintiff from certain risks. Duty "is not an immutable fact of nature '"but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."`" (Ballard v. Uribe, 41 Cal.3d at p. 572, fn. 6, 224 Cal. Rptr. 664, 715 P.2d 624; Rowland v. Christian (1968) 69 Cal.2d 108, 112-113, 70 Cal.Rptr. 97, 443 P.2d 561, superseded by Civ.Code § 1714.7 as to trespassers on railway cars (see Perez v. Southern Pacific Transportation Co. (1990) 218 Cal.App.3d 462, 467, 267 Cal.Rptr. 100); Pineda v. Ennabe, supra, 61 Cal.App.4th at p. 1407, 72 Cal.Rptr.2d 206.)
Courts in California and in other states have held that a landlord owes no duty to a tenant to install child-proof window screens or other protections against a child falling out of a window in the apartment in which the child resides, and that normal window screens are intended not to prevent children from falling out, but to prevent the entry of insects. (Pineda v. Ennabe, supra, 61 Cal.App.4th 1403, 72 Cal. Rptr .2d 206 [landlord not liable for failure to provide a screen or other protection sufficient to prevent child falling out]; Schlemmer v. Stokes (1941) 47 Cal.App.2d 164, 167, 117 P.2d 396 [landlord not liable for baby falling through screened window, for "[i]t is a matter of common knowledge that a screen is not placed in a window for the purpose of keeping persons from falling out"]; Gustin v. Williams (1967) 62 Cal.Rptr. 838, 255 Cal.App.2d Supp. 929, 932 [landlord not liable for child falling out of an unlocked screen window], implicitly overruled on other grounds by Rowland v. *305 Christian, supra, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561; Lamkin v. Towner (1990) 138 Ill.2d 510, 150 Ill.Dec. 562, 563 N.E.2d 449; Miller v. Woodhead (1887) 104 N.Y. 471, 11 N.E. 57; Egan v. Krueger (1927) 103 N.J.L. 474, 135 A. 811, disapproved by Anderson v. Sammy Redd and Associates (1994) 278 N.J.Super. 50, 55, 650 A.2d 376, 378; Riley v. Cincinnati Metropolitan Housing Authority (1973) 36 Ohio App.2d 44, 301 N.E.2d 884; see also Amos v. Alpha Property Management, supra, 73 Cal.App.4th at p. 906, 87 Cal. Rptr.2d 34 [dictum].)
In the most recent discussion of the subject, the court in Amos v. Alpha Property Management, supra, 73 Cal.App.4th 895, 87 Cal.Rptr.2d 34, while expressing adherence to the rule that there is no landlord duty to provide window screens to protect child tenants, deviated from the philosophy supporting that rule by imposing a duty to take reasonable precautions to prevent young children from falling out of windows in common areas of the building, areas that are under the control of the landlord. In cases such as Pineda v. Ennabe, supra, 61 Cal.App.4th 1403, 72 Cal. Rptr.2d 206, however, plaintiffs unsuccessfully sued the landlords for failing to provide protection within the apartment, but in those cases, the degree of control of the landlord over repairs within the apartment did not seem to be a factor. Presumably, a landlord has the ability to make repairs for safety reasons anywhere in the building. Moreover, the court in Amos v. Alpha Property Management, supra, 73 Cal. App.4th at pages 900 and 906, 87 Cal. Rptr .2d 34, cited approvingly a case finding liability of the landlord on the ground that under the facts specified, it was foreseeable that a child would fall out of a window within an apartment. (Brady on Behalf of Brady v. Rivella Developers, Inc. (La.Ct.App.1982) 424 So.2d 1104.) Thus, the Amos court seemingly relied on factual distinctions as to physical characteristics of the windows and surrounding areas involved, rather than on any overriding legal principle. But the court continued to pay lip service to the vitality of the rule that the landlord owes no duty to provide in apartments protection against children falling out of windows even as it imposed such a duty in connection with a common area of an apartment building.
Notwithstanding this equivocation in Amos, the rule that absent a contractual or statutory obligation there is no duty owed by landlords to child tenants to install screens or other protective devices on windows appears too firmly established in California to disturb at this time and on this record. We do, however, question this rule. Although it is well-established that landlords are not all-purpose insurers of tenants' safety (Kwaitkowski v. Superior Trading Co. (1981) 123 Cal.App.3d 324, 327, 176 Cal.Rptr. 494), we are skeptical of the conclusion that no duty to install and maintain adequate window screens should exist, in light of the evolution of tort, contract and landlord-tenant laws. "The modern residential tenancy carries with it expectations of reasonable conduct that justice demands and reason dictates. One of those legitimate expectations includes the proper installation and maintenance of all equipment, including something so basic as a window screen." (Anderson v. Sammy Redd and Associates, supra, 650 A.2d at p. 378 [reversing summary judgment for defendant landlord in negligence suit involving a child's fall from a window when the window screen gave way]; see also Markarian v. Simonian (1977) 373 Mass. 669, 369 N.E.2d 718 [reversing directed verdict for landlord in suit arising from landlord's allegedly negligent window screen repair]; Gould v. DeBeve (D.C.Cir. 1964) 330 F.2d 826 [affirming judgment *306 against defendant landlord in negligence suit brought after a child's fall from an apartment window]; Contento v. Albany Medical Center Hospital (N.Y.App.Div. 1977) 394 N.Y.S.2d 74, 57 A.D.2d 691 [affirming jury verdict for plaintiff in negligence suit against landlord for failure to repair window screen resulting in child's fall].)
Principles set forth in both California decisional and statutory law can be invoked to support the proposition that there should be a duty of landlords to install window screens or other protective devices sufficient to protect children from falling from apartment windows. In Rowland v. Christian, supra, 69 Cal.2d at pages 112-113, 70 Cal.Rptr. 97, 443 P.2d 561, the California Supreme Court specified the general criteria for determining, in effect, whether to impose a duty of care. These include such factors as the foreseeability of harm; the certainty of injury; the proximity of the conduct and the injury; the moral blame ascribed to the conduct; the policy of preventing future harm; the extent of the burden and consequences to the community of imposing the duty; and the availability, cost and prevalence of insurance. (Ibid.)
Our analysis of the Rowland factors leads to a different conclusion than the one arrived at by the court in Pineda v. Ennabe, supra, 61 Cal.App.4th at pages 1408-1409, 72 Cal.Rptr.2d 206. The risk of small children falling out of windows is obvious and highly foreseeable. "Surely anyone familiar with young children, especially two-year-olds, is aware of their propensity to climb and can appreciate the allurement of an open window to a toddler." (Amos v. Alpha Property Management, supra, 73 Cal.App.4th at p. 902, 87 Cal.Rptr.2d 34.) Compounding the foreseeability of harm from children falling from unprotected windows in apartment buildings is the certainty of the resultant, serious harm. Although it is regularly observed that window screens may not prevent all falls (see, e.g., id. at pp. 902-903, 87 Cal.Rptr.2d 34; Gustin v. Williams, supra, 62 Cal.Rptr. 838, 255 Cal. App.2d Supp. at p. 932), common sense suggests that window screens offer some protection against falls through an otherwise uncovered, open window. (See Section V, post)
To be sure, parents are often irresponsible and even negligent in failing to protect against such dangers. But even the most vigilant parent has difficulty monitoring an active child at all times. The foreseeability of parents' alleged negligence has been considered in determining whether a duty exists with respect to window screens. Courts have drawn distinctions based on the height of the window or the objects under the window. (Amos v. Alpha Property Management, supra, 73 Cal.App.4th at pp. 906-907, 87 Cal.Rptr.2d 34.) These distinctions should not be conclusive. It is foreseeable that in a small apartment there are opportunities for a toddler to climb on furniture or otherwise gain access to and fall out of an open window.
Furthermore, the burden of a requirement to install and maintain window screens sufficient to protect children from falling from windows appears to be relatively minimal. A duty of protecting children from falling out of windows in the common areas of apartment buildings already exists in this state. (Amos v. Alpha Property Management, supra, 73 Cal. App.4th at p. 900, 87 Cal.Rptr.2d 34.) There is evidence that window screens are not particularly expensive and that local governments already require the installation and repair of window screens as part of housing or health and safety laws (see, e.g., Los Angeles County Code § 11.20.330; Los Angeles Municipal Code *307 §§ 91.8104.5.1-91.8104.5.2). The property here was subject to the Los Angeles Municipal Code, and following the incident, the defendants were cited for numerous code violations, including for "defective windows"this meant missing window screens. As window screens are frequently required already, it would not appear to add a significant burden to require that those screens be of such strength that they impede small children from falling out of a window or that there be other sufficient protection. (See, e.g., New York City Health Code § 131.15 [requiring installation and maintenance of window guards in apartments in which children under 10 years of age reside].)
Given the relative simplicity of providing window screens and the laws requiring their installation, it stands to reason that the policy of preventing the foreseeable, grave harm to children posed by inadequately covered apartment building windows could be promoted without imposing an onerous burden on landlords. On balance, the cost to landlords of providing the minimal protection of adequate window screens would appear outweighed by the cost of injured and maimed children.
Accordingly, contrary to the court in Pineda v. Ennabe, supra, 61 Cal.App.4th at page 1408, 72 Cal.Rptr.2d 206, we believe that the failure to install safe window screens does create a sufficient certainty that the accident that took place here would occur; that the connection between the landlord's omission and the injury is significant; that the omission is morally blameworthy; and that the foreseeability of parents' inadvertence creates all the more reason why the landlord should have acted. (See Section V, post.) Moreover, it seems that landlord liability insurance is likely to be more widespreadcertainly in economically disadvantaged areasthan adequate medical insurance coverage for child victims. Under the Rowland v. Christian analysis, therefore, reasonable grounds exist for determining that landlords have a duty to child tenants to install screens or protective devices sufficient to protect the children from falling out of apartment windows.
Our conclusion is consistent with California statutory law. California law has long provided that "[e]very one is responsible ... for an injury occasioned to another by his want of ordinary care or skill in the management of his property...." (Civ. Code, § 1714, subd. (a).) None of the public policy considerations enumerated in Rowland v. Christian, supra, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, provides a basis for excepting a landlord's failure to provide a safe premises for child tenants from the general rule of negligence liability set forth in Civil Code section 1714, subdivision (a). {Martinez v. Bank of America Nat. Trust and Savings Assn. (2000) 82 Cal.App.4th 883, 890, 98 Cal.Rptr.2d 576 [to determine if an exception to Civ.Code § 1714, subd. (a), should be established, the public policy factors stated in Rowland v. Christian, supra, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, are evaluated].)
For all these reasons, there are reasonable grounds for establishing that, as part of a duty to exercise ordinary care in the maintenance of the premises (Stoiber v. Honeychuck (1980) 101 Cal.App.3d 903, 924, 162 Cal.Rptr. 194; Brennan v. Cockrell Investments, Inc. (1973) 35 Cal.App.3d 796, 801, 111 Cal.Rptr. 122), landlords have a duty to child tenants to install screens or some device on windows sufficient to protect those children from falling out of the windows. Nevertheless, if what the courts in Pineda and Amos refer to as "some new duty of care ... to prevent children from falling out [of windows]" is to be clearly established now, it is desirable that it be *308 done by our Supreme Court or Legislature. (Pineda v. Ennabe, supra, 61 Cal. App.4th at p. 1408, 72 Cal.Rptr.2d 206; Amos v. Alpha Property Management, supra, 73 Cal.App.4th at p. 900, 87 Cal. Rptr.2d 34; Best v. Services for Cooperative and Condominium Communities (1993) 256 Ill.App.3d 462, 466, 195 Ill.Dec. 815, 629 N.E.2d 123 (conc.opn.); Gustin v. Williams, supra, 62 Cal.Rptr. 838, 255 Cal. App.2d Supp. at p. 933.)

III. Covenant to Install Screen
Although California courts have not imposed a general duty upon landlords to install window screens or other protection from falls from within an apartment, plaintiffs evidence in this case is sufficient to establish an obligation on the part of landlord to do so based on the provisions of the rules incorporated into the lease with respect to apartment repairs and alterations. The common law rule that a landlord has no duty to repair is subject to three exceptionsconcealment of a known danger, an express covenant to repair, or a statutory duty to repair. (Gustin v. Williams, supra, 62 Cal.Rptr. 838, 255 Cal. App.2d Supp. at p. 931.) Promises by the landlord to repair qualify as an express promise to repair and impose a duty upon the landlord if they are supported by consideration or are included in the lease. As one court stated, "If by the terms of the leasing [sic] the landlord agrees to repair defective conditions he is, of course, obliged to do so." (Metcalf v. Chiprin (1963) 217 Cal.App.2d 305, 307, 31 Cal. Rptr. 571.) The failure to do so may result in tort liability, not just contractual liability. (Scholey v. Steele (1943) 59 Cal. App.2d 402, 138 P.2d 733 [holding that a landlord who has expressly covenanted to repair the leased premises is liable in tort for negligent failure to do so]; Singer v. Eastern Columbia, Inc. (1945) 72 Cal. App.2d 402, 412, 164 P.2d 531 [same]; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 597, p. 777 ["A special promise by the landlord to repair, either in the lease or otherwise supported by consideration, may make him liable for injuries to the lessee or the lessee's invitees resulting from his negligent failure to repair"].) The availability of tort liability for breach of the covenant to repair that exists in California has gained acceptance elsewhere, although there remains a division of authority in the United States. (Compare Rest.2d, Torts § 357, corns, a, b [noting that tort liability for breach of a covenant to repair "is still rejected by a majority of the courts which have considered it"] with Prosser & Keaton, Torts (5th ed.1984) § 63, p. 443 ["An increasing number of courts, however, now a majority, have worked out a liability in tort for such injuries to a person or property" when the landlord breaches a covenant to repair]; see also 5 Harper et al., The Law of Torts (2d ed.1986) § 27.16, pp. 287-289 ["In a growing number of jurisdictions the nonperformance of a covenant to repair [gives rise to tort liability]. The weight of older authority limited recovery for mere nonperformance of such a covenant to the reasonable cost of repairs and refused to include damages for personal injury caused by the disrepair. A conflict of authority on the point persists, though the trend of recent cases is toward the inclusion of such damages where the failure to repair has been negligent, and injury has occurred to the tenant or a person entering in the tenant's right"].)
In this case, the evidence suggests that the premises rules and the practice of the landlord establish an express covenant or its equivalent on the part of the landlord to make the necessary repairs. There is evidence that the landlord, through the rules that the landlord promulgated and incorporated into whatever lease there was, undertook to make all necessary repairs *309 and alterations within the apartment and to put a screen on the window. Further, the premises rules expressly prohibited tenants from making repairs or alterations within the apartment, leaving the plaintiffs family dependent upon the landlord's express agreement to install a window screen on the uncovered window. Accordingly, plaintiff has submitted sufficient evidence of facts that, if accepted, would establish that the landlord had an express duty to install the screen by the terms of the lease or the rules that were a part thereof. (Scholey v. Steele, supra, 59 Cal. App.2d at p. 404, 138 P.2d 733 [landlord's promise "`to repair it whenever it would need anything' is sufficiently definite to support the finding that the owner covenanted to assume the ordinary upkeep, maintenance and repair of the premises"]; Saturnini v. Rosenblum (1944) 217 Minn. 147, 152, 14 N.W.2d 108, 111 [evidence of repeated tenant requests for screen repair because of danger to resident children and promises to repair by landlord constituted "ample evidence ... that defendant had agreed to repair the screen in question in a manner which would at least lessen the danger to the children of falling through the same"]; Ross v. Haner (Tex. Comm'n App.1924) 258 S.W. 1036, 1041 [by entering into a rental contract containing specific provisions requiring the landlords to repair an apartment window, the landlords "brought themselves in such relation to the child that they owed it not merely a moral, but a legal, duty, to use ordinary care to protect it from this injury"].)

IV. Negligent Undertaking to Install Screen
Earlier statements of landlord-tenant law provided that "the mere failure to make repairs after notice or a promise to do so imposes no tort liability on a landlord." (Dorswitt v. Wilson (1942) 51 Cal. App.2d 623, 625, 125 P.2d 626; Gustin v. Williams, supra, 62 Cal.Rptr. 838, 255 Cal. App.2d Supp. at p. 931.) In the years since this principle was established, however, the doctrine of liability for negligent performance of a voluntary undertaking set forth in the Restatement Second of Torts has gained acceptance in California. The Restatement provides that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform][3] his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of the reliance of the other or the third person upon the undertaking." (Rest.2d Torts, § 324A.)
The California Supreme Court has explicitly adopted the Restatement principle of tort liability for the negligent performance of a voluntarily assumed undertaking. (Artiglio v. Corning Inc., supra, 18 Cal.4th at p. 613, 76 Cal.Rptr.2d 479, 957 P.2d 1313; Paz v. State of California (2000) 22 Cal.4th 550, 559, 93 Cal.Rptr.2d 703, 994 P.2d 975.) The Supreme Court recently held that a negligent undertaking claim requires evidence that "(1) the actor undertook, gratuitously or for consideration, to render services to another; (2) the services rendered were of a kind the *310 actor should have recognized as necessary for the protection of third persons; (3) the actor failed to exercise reasonable care in the performance of the undertaking; (4) the actor's failure to exercise reasonable care resulted in physical harm to the third persons; and (5) either (a) the actor's carelessness increased the risk of such harm, or (b) the actor undertook to perform a duty that the other owed to the third persons, or (c) the harm was suffered because either the other or the third persons relied on the actor's undertaking." (Paz v. State of California, supra, 22 Cal.4th at p. 559, 93 Cal.Rptr.2d 703, 994 P.2d 975.)
We believe that the Paz reasoning applies to instances in which the promisor fails to perform the undertaking altogether, because there is no logical distinction between the failure to perform a task properly and the failure to perform it at allthere is the same risk, the same harm, the same reliance, and at least the same level of moral culpability in nonperformance as in partial or substandard performance. As one California court stated some time ago, "a person may become liable in tort for negligently failing to perform a voluntarily assumed undertaking even in the absence of a contract so to do." (Valdez v. Taylor Automobile Co. (1954) 129 Cal.App.2d 810, 817, 278 P.2d 91.)
The California Supreme Court's analysis of legal duty as set forth in Paz makes no exceptions for landlords, and there appears to be no reason to exclude the landlord-tenant relationship from its ambit. This theory of liability for negligence necessarily overrides the general rule that no liability may be imposed upon a landlord for failure to make repairs after a promise to do so without consideration.
Under the Restatement and Paz v. California (supra, 22 Cal.4th 550, 93 Cal.Rptr.2d 703, 994 P.2d 975) approach, triable issues of material fact exist as to whether the landlord negligently performed an undertaking to repair the window screen. The evidence submitted by the plaintiff, if accepted, would establish each of the elements of a negligent undertaking claim, because the plaintiff produced evidence that the landlord agreed to replace the window screen; that the landlord was aware that the screen was requested in order to protect plaintiff; that the landlord failed to install a window screen; that the failure to install the screen resulted in harm to the plaintiff; and that the plaintiffs injuries were suffered because the plaintiffi.e. the tenantsin effect, relied on the landlord's promise to replace the screen.

V. Causation
Even if the landlord had an express duty to install the screen under the lease or voluntarily undertook to install one, some authorities suggest that the landlord is still not liable for the child's fall out of the unprotected window because screens are not intended for the purpose of child safety and because the negligence of parents is not foreseeable. (Amos v. Alpha Property Management, supra, 73 Cal.App.4th at p. 906, 87 Cal.Rptr.2d 34 ["numerous cases ... have held [that] when a child falls out of an apartment window the presence or absence of an insect screen on the window is irrelevant in determining a landlord's negligence because the purpose of an insect screen is to keep insects out, not people in"]; Pineda v. Ennabe, supra, 61 Cal.App.4th at p. 1408, 72 Cal.Rptr.2d 206 ["reasonable landlords could properly assume that parents would take precautions to supervise their children and prevent them from falling out windows"].)
Whatever the purpose of window screens, it appears to defy reality to conclude that window screens offer no protection against a child's fall from an otherwise *311 uncovered window. As one court has observed, "we doubt that many people with small children have regarded the sole function of a screen in an upstairs bedroom as that of keeping flies out." (Gould v. DeBeve, supra, 330 F.2d at p. 828, fn. 2.) Here, there is evidence that the father requested of the landlord that the screen be replaced because of the danger to the child of an open, uncovered window. Plaintiff has submitted expert testimony that the screens would prevent some small children from falling out of a window. That evidence suggests that the barrier created by the screen's presence would by feel and sight naturally prevent a child from proceeding further, even if he or she could. Even if a child possessed the analytical ability and manual dexterity to remove the screen, the time that such maneuvering would consume might offer additional time for a caregiver to intervene and prevent a fall.
We agree with the observation of the court in Shaw v. Butterworth (1931) 327 Mo. 622, 630, 38 S.W.2d 57, 61, that "while a primary purpose of a window is to admit light and air, and to prevent the entry of objectionable elements, and that of screens to keep out insects while letting in light and air, yet it is common knowledge that a secondary purpose is allocated to windows and screens and that purpose involves ordinary protection against persons falling from the window." Judicial statements that screens are of no protective value do not reflect what seems obvious.
"There are, obviously, limits upon the extent to which screens either can, or are expected to, prevent people of all ages and sizes from falling out of windows." (Gould v. DeBeve, supra, 330 F.2d at p. 828, fn. 2.) Here, however, plaintiff introduced evidence that the missing screen would have prevented him from falling out of the window, that the father advised the landlord that he desired the screen to protect his child from falling out of the window and the landlord promised to install a screen. Whether a breach of an enforceable covenant by the landlord to provide a window screen or the negligent performance of the undertaking was the proximate cause of plaintiffs injuries is a triable issue of fact. (Shaw v. Butterworth, supra, 38 S.W.2d at p. 62 ["As we have previously said, it is common knowledge that screens, as ordinarily fixed in windows, have some resistance to pressure, and it was a jury question under the facts, as to whether the screen, if as ordinarily and with reasonable care fixed therein, would have prevented plaintiff from falling out the window"]; Anderson v. Sammy Redd and Associates, supra, 650 A.2d at p. 378 ["Questions concerning a window screen's purpose and whether or not a properly installed screen would have prevented the fall should have been left for a jury's consideration since they obviously involve factual disputes"]; Drager v. Aluminum Industries Corp. (Minn.Ct.App.1993) 495 N.W.2d 879 [affirming trial court's denial of summary judgment in negligence suit against landlord arising from child's fall from apartment window with screen allegedly improperly installed by landlord]; Saturnini v. Rosenblum, supra, 217 Minn. 147, 14 N.W.2d 108 [finding substantial evidence to support jury verdict against landlord on wrongful death claim based on child's fall from window with unrepaired screen after repeated requests by parents and agreement by landlord to repair screen]; Markarian v. Simonian, supra, 373 Mass. 669, 369 N.E.2d 718 [reversing directed verdict for defendant landlord in negligence suit arising from a child's fall from window after landlord installed screen that was allegedly too narrow].)
The issues of whether plaintiffs parents were negligent and whether parental *312 negligence was foreseeable by the landlord such as to preclude the necessary causation should not be determined in favor of the defendants as a matter of law here.[4] (Pool v. City of Oakland (1986) 42 Cal.3d 1051, 1063;, 232 Cal.Rptr. 528, 728 P.2d 1163, 6 Witkin, Summary of Cal. Law (9th ed. 1987) Torts, § 984, p. 374.) That parents may not be sufficiently attentive in protecting against their children falling out of an open window would seem foreseeable. The court in Pineda v. Ennabe, supra, 61 Cal.App.4th at page 1408, 72 Cal.Rptr.2d 206, acknowledged as much by saying that "a landlord arguably may foresee that his tenants might carelessly leave their small children unattended and exposed to dangers...." Indeed, it is because of such likely lack of parental vigilance that protective screens are necessary. The California Supreme Court has said, "`If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.'" (Bigbee v. Pacific Tel. & Tel. Co. (1983) 34 Cal.3d 49, 58, 192 Cal.Rptr. 857, 665 P.2d 947.) Accordingly, any purported parental negligence here does not justify the summary judgment.

DISPOSITION
The summary judgment is reversed. Plaintiff shall recover his costs on appeal.
We concur: TURNER, P.J., and ARMSTRONG, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] Contreras did business as Con Pro Serve Property Management Service. For ease of reference, we will refer to Contreras and Con Pro Serve collectively as "landlord" or "defendants."
[2] We state the evidence supplied by appellant in accord with the summary judgment standard of review, which standard we discuss post.
[3] The published text of section 324A uses the term "protect" rather than "perform." The California Supreme Court has observed that the published text apparently reflects a typographical error. (Artiglio v. Corning Inc. (1998) 18 Cal.4th 604, 613, fn. 4, 76 Cal. Rptr.2d 479, 957 P.2d 1313.)
[4] The negligence, if any, of plaintiff's parents may confer upon the landlord the right to seek equitable indemnification from them. (See Herrero v. Atkinson (1964) 227 Cal. App.2d 69, 73-76, 38 Cal.Rptr. 490.)