Rosalie WHITE and Kenneth White, II, as Co–Trustees for the Next of Kin of Kenneth Lee–Winans White, III, a/k/a Minogeshig, Decedent, Appellants,

v.

MANY RIVERS WEST LIMITED PARTNERSHIP d/b/a Many Rivers Apartments, et al., Respondents.

No. A10–1575.

Court of Appeals of Minnesota.

May 3, 2011.

Joseph J. Osterbauer, Christina M. Makens, Osterbauer Law Firm, Minneapolis, MN, for appellants.

Timothy W. Waldeck, Theodore J. Waldeck, Waldeck & Lind, P.A., Minneapolis, MN, for respondents.

Considered and decided by ROSS, Presiding Judge; CONNOLLY, Judge; and RANDALL, Judge.*

## OPINION

ROSS, Judge.

Two-year-old Kenneth White III died after he pushed through a window screen and fell from his grandmother's third-floor Minneapolis apartment. Parents Rosalie White and Kenneth White II appeal from the district court's entry of summary judgment in favor of Many Rivers Apartments. We conclude that Many Rivers had no duty to maintain a sufficiently strong screen to withstand the force of the child, that no hazardous condition was hidden by Many Rivers but it was open and obvious and known, and that Many Rivers did not contractually agree to modify the window screens to a more secure strength. We therefore affirm summary judgment.

## FACTS

The lamentable events of this case occurred in August 2006 while toddler Kenneth White III visited his grandmother, Arlene White, in the two-bedroom Many Rivers apartment that she shared with the child's aunt, Dawn Steece. Before the child arrived with two siblings and his mother, Rosalie White, other family members moved the bed in the guest bedroom where Rosalie and her children often stayed, making it flush against the wall under the room's only window.

Based on the undisputed facts relied on by the district court at summary judgment, the visit began without incident and turned tragic. Kenneth White and his five-year-old brother played primarily in the guest bedroom. Steece periodically checked on them. She once saw the boys on the bed and told them to get off. Rosalie White checked on them and noticed that the window was open. She closed and latched it and told the boys not to play near it. Ten minutes later, Steece again checked on the boys. She recalled later that the window was closed and the boys were playing on the floor. Within five

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

minutes, however, the five-year-old boy left the bedroom and approached his mother to report the fall. He told her that "something" had fallen from the window and indicated that it was his brother. Rosalie White ran to the bedroom and discovered that the window was open and that her child lay motionless on the pavement below.

She telephoned for emergency help and ran downstairs. Paramedics took the child to Hennepin County Medical Center, where he later died.

The parties provided the district court with undisputed facts regarding the care of the apartment windows. Many Rivers periodically inspected its apartment units. The inspection included examining the window screens to ensure that they fit appropriately in the window frame, had no holes, were not bent, and could easily be removed. Many Rivers expects its tenants to inform it of any maintenance or repair needs. It had received several complaints only that screens were popping out, broken, or had holes.

Each screen was held in place with tension pins. Arlene White testified that at some earlier point longer screws rather than pins were installed on the screen. She claimed that the metal screws better secured the screen but that when Many Rivers painted the exterior window trim in 2006, workers removed the screen and resecured it with the original pins. Arlene White said that she had complained to Many Rivers that she had only to touch the screen and it would dislodge from its place. Each screen, including the one through which Kenneth fell, bore a warning label: "Screen will not stop child from falling out window. Keep child away from open window."

The parties presented the district court with evidence of a previous similar fall and Many Rivers's response. Two months before Kenneth White III's accident, a young girl had fallen from a fourth-floor window in the Many Rivers apartment building across the street from Arlene White's building. Many Rivers sent two notices to residents informing them about the girl's fall and warning them to keep children away from the windows. The first letter warned residents not to rely on the screens to prevent falling and advised of its own response to the girl's fall:

> This is a reminder that the screens on the windows are only designed to keep insects from getting into the apartment, not to keep things or people inside. It is very important that you do not allow anyone to sit in the windows or to lean against the screens to prevent this type of accident from occurring again.
>
> . . . .
>
> The owners are meeting with officials and trying to determine if there are options that are allowed within the building and fire codes to avoid this in the future.

A second letter warned parents to keep children away from windows, reminded tenants that screens could not prevent falls, and advised of Many Rivers's safety efforts:

> We are asking the parents at Many Rivers East and West to keep their children from playing near open windows.... Please remember, the windows and screens are not designed or constructed to keep you from falling out, but to keep the unwanted bugs out.
>
> . . . .
>
> We will be working with the City of Minneapolis, the Fire Department and the Management Company on these safety issues.

Both letters also suggested that tenants open the windows from the top rather than the bottom. The second letter offered a signature line for tenants and requested that the signed form be returned.

Arlene White knew that the girl had fallen from a window and she remembered receiving and signing one of the notice letters. She stated that she only "vaguely" remembered the details of the letter because it was "just a notice." She stated that she did not recall the warnings that the window screens were not designed to prevent people from falling out. Steece remembered the girl's fall and was "pretty sure" that she too had seen a notice. Arlene White stated that she commented to Rosalie White on the morning of her son's fall that she should be careful about the windows "because of the little girl that had fallen in the building next door." Rosalie White stated that she had not seen the notice letters or heard about the girl's fall. But she acknowledged that she had always instructed her children not to play by the windows at Many Rivers. The adults repeatedly told the children, "Stay away from the windows."

An engineer whose affidavit the Whites submitted to the district court opined that Many Rivers could have used a safer window and screen and prevented the fall. Many Rivers countered with another engineer's opinion that its windows and screens met all applicable building codes. After the fall, Minnesota enacted a law that required stronger windows and screens to prevent falls. See Minn.Stat. § 326B.106, subd. 7 (2010); Minn. R. 1303.2310 (2009). This prompted Many Rivers to change its window design.

The Whites sued Many Rivers for negligence, and they also sued the American Indian Community Development Corporation and Perennial Management LLC. The district court granted Many Rivers's motion for summary judgment, holding that it did not breach any duty owed to Kenneth White III. The Whites appeal summary judgment to Many Rivers.

## ISSUE

Did the district court err by concluding that Many Rivers breached no duty that it owed to White?

## ANALYSIS

The Whites contend that the district court erroneously granted summary judgment after holding that the record contained no proof that Many Rivers breached any duty owed to the child. We review de novo the district court's decision to grant summary judgment and examine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. Minn. R. Civ. P. 56.03; *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). The nonmoving party must provide evidence on which a jury could reasonably find in that party's favor on each element of the claim. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). We apply the same standard on appeal, relying on the undisputed facts and reviewing any disputed facts in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■ The Whites alleged negligence. To avoid summary judgment, they had to present proof of each element of their negligence claim: the existence of a duty of care, breach of that duty, proximate causation, and damages. *Foss v. Kincade,* 766 N.W.2d 317, 320 (Minn.2009). Whether a duty exists is a legal issue reviewed de novo on appeal. *Oakland v. Stenlund,* 420 N.W.2d 248, 250 (Minn.App.1988), *review denied* (Minn. Apr. 20, 1988). For the reasons that follow, we hold that the district court properly held that the claim cannot survive summary judgment because Many Rivers breached no duty of care it owed to the child.

■ Landlords generally owe no duty of care to their tenants and are not liable for damages caused by defective conditions on the leased premises. *Id.* at 251. Several exceptions to this common-law precept exist, allowing for a duty if the landlord (1) has willingly undertaken to repair the premises and done so negligently, (2) retains control of certain areas of the premises, or (3) is aware of a hidden hazard on the premises but the tenant is not. *Gradjelick v. Hance,* 646 N.W.2d 225, 231 (Minn.2002). The Whites argue that the evidence would support all three exceptions. Their arguments do not convince us.

### Negligent Repair

■ The Whites contend that because Many Rivers assumed the duty to fix the windows by "regularly remov[ing] and repair[ing] screens," it "therefore had a duty to do so with due care." They reason that because the screens easily fell out of place, Many Rivers must have negligently repaired them.

■ It is true that if a landlord assumes the duty to correct a defect on part of the property when not required by the lease to do so, "the landlord must bear the burden of failure to make a good job of it." *Canada by Landy v. McCarthy,* 567 N.W.2d 496, 504 (Minn.1997) (quotation omitted). But the Whites misunderstand the limited scope of the duty created by this exception. The duty of reasonable care to make a good job of repairs requires only that "the necessary repairs [be performed] in a reasonable way." *Id.; see also Myhre v. Schleuder,* 98 Minn. 234, 240, 108 N.W. 276, 278 (1906) (holding that when landlord constructed a porch without a duty to do so the landlord had to see that "it was constructed in a reasonably safe way"). The landlord's duty is not to make improvements to the safety of the thing repaired exceeding the safety standards otherwise imposed by law. Unless the Whites can establish that the screens were designed to contain a child and that the landlord's repairs unreasonably controverted that design, the negligent-repair exception does not apply to create a duty. The Whites cannot make that showing.

The Whites point to *Drager by Gutzman v. Aluminum Indus. Corp.,* 495 N.W.2d 879 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993), to demonstrate that the district court erroneously failed to recognize a duty after Many Rivers repaired the screens. *Drager* does not advance the Whites' argument. In *Drager* we affirmed the district court's denial of summary judgment against a landlord where a genuine issue of fact existed as to whether the landlord breached his duty of care in maintaining screens in an apartment *as required by the lease. Id.* at 882, 885. We do not read *Drager* as a "negligent-repair" case. The express lease agreement was the sole source of any duty.

*Saturnini v. Rosenblum* is instructive. Similar to the facts alleged in *Drager,* the landlord in *Saturnini* expressly and repeatedly promised to repair a broken screen, failed to make repairs, and a child fell through the screen. 217 Minn. 147, 148–50, 14 N.W.2d 108, 109–10 (1944). The *Saturnini* court emphasized that the landlord's duty arose only from the express agreement to maintain the window screen. *Id.* at 153, 14 N.W.2d at 112. ("[A] landlord may not be required to furnish a screen strong enough under all circumstances to prevent a person from falling through it."). The Whites' negligent-repair argument fails as a matter of law.

### Landlord Retains Control

■ The Whites argue that because Many Rivers retained control over the repair and maintenance of the window screens, they owed a duty of care to White to ensure that the screens were properly

maintained. This common-law exception arising from landlord control allows for a duty of care if the landlord retains possession of an apartment's common areas, like stairs, halls, elevators, or yard space. *Rosmo v. Amherst Holding Co.*, 235 Minn. 320, 324, 50 N.W.2d 698, 701 (1951) (holding that where landlord retained control of private alleyway that his tenants had a right to use, landlord was required to maintain it in a "reasonably safe condition"); *Nubbe v. Hardy Cont'l Hotel Sys. of Minn., Inc.*, 225 Minn. 496, 499, 31 N.W.2d 332, 334 (1948) (holding that evidence supported verdict for tenant where landlord retained control of common stairway and did not inspect steps for faulty condition).

This exception does not apply here. Many Rivers's individual apartment windows were not open to common use by all tenants and they are not subject to the landlord's control. Many Rivers's painting of the windows and its addressing tenant complaints did not establish the kind of "control" necessary for this exception and its maintenance created no duty to enhance the screen to prevent a child from falling. We are not persuaded by the Whites' related contention that Many Rivers was bound to continue using screws instead of tension pins after it painted the window frames; they cite to no industry standards or caselaw for their implicit proposition that window screens generally are designed for human containment or that Many Rivers was obligated to modify the screens (or to retain a prior modification) to increase their ability to withstand greater internal force.

### Hidden Dangerous Condition

■ The Whites' next theory, that a duty arose because of a hidden danger, fails quickly on these facts. If a property contains hidden dangers that the landlord knows about and the tenant does not, the landlord must warn tenants about that danger, but the landlord has no corresponding duty to warn a tenant's guests. *Oakland*, 420 N.W.2d at 251. And no warning is required even for the tenant when the tenant knows of the dangerous condition or the condition is so open and obvious that the tenant can be expected to have discovered it on her own. *See Johnson v. O'Brien*, 258 Minn. 502, 506, 105 N.W.2d 244, 247 (1960) (emphasizing that "of course" no duty arises in these scenarios) (quotation omitted).

On the undisputed facts here, the Whites were sufficiently apprised of the danger both because of the nature of the danger and because of the various and clear written warnings actually provided. And because the Whites knew, we assume their two-year old is adequately protected. *Cf. Sirek by Beaumaster v. Minn. Dep't of Natural Res.*, 496 N.W.2d 807, 811 (Minn. 1993) (relieving a landowner's duty to warn children where "small children are being watched by their parents" (quotation omitted)).

■ Third-floor windows are hazardous for unsupervised childplay and the Whites knew this. Where tenants or their guests are actually aware of a hazardous condition, the landlord is not liable for injuries resulting from the condition. *Oakland*, 420 N.W.2d at 251. Both the tenants and the child's mother recognized the danger of children playing by windows. From the first time the Whites visited Many Rivers, Rosalie White warned her children not to play by the windows. Shortly before the fall, she went into the bedroom and "told the boys not to be playing by the window." Arlene White and Steece both commented on the day of the fall about the need for care near windows. That all adults in the home were aware of the very danger that led to Kenneth's death and were specifically conscious of it shortly before it occurred

mutes this exception entirely. This could end this discussion.

Even if a duty to warn existed, Many Rivers gave multiple written warnings to tenants about the windows' danger. Shortly after the girl's fall and not long before Kenneth's, Many Rivers twice informed tenants in writing that the purpose of window screens is not to prevent people from falling but to prevent insects from entering. And the screens were clearly labeled with this same warning to keep children from windows. These are not the actions of a landlord hiding a hazardous condition but of one providing clear warnings where the hazard was already obvious.

For the various independent reasons stated, we conclude Many Rivers did not breach any duty to warn about the dangerous condition.

### Express Agreement

■ We turn to a theory sounding in contract on the Whites' argument that Many Rivers expressly agreed to make repairs it was not otherwise obligated to make under common law. At oral argument before this court, the Whites' counsel asserted that Many Rivers expressly agreed to repair the screens as a matter of contract law when they provided the written notices about the screen's hazard. Issues not briefed on appeal are generally waived. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn.1982). We will nevertheless briefly address the argument.

■ A landlord may contractually create a duty to maintain the leased premises. *Dyrdal v. Golden Nuggets, Inc.*, 672 N.W.2d 578, 587 (Minn.App.2004), *aff'd*, 689 N.W.2d 779 (Minn.2004). When a lease contains no stipulation on the subject of maintenance, generally "there is no implied covenant on the part of the landlord ... that the premises are or will prove to be suitable for the tenant's use." *Krueger v. Farrant*, 29 Minn. 385, 387, 13 N.W. 158,

159 (1882). But if a landlord expressly agrees to maintain part of the lessee's premises, he then creates a duty to exercise reasonable care. *Drager*, 495 N.W.2d at 885. Counsel argued that the following language in the notices created an express duty to repair the windows to protective strength: "The owners are meeting with officials and trying to determine if there are options that are allowed within the building and fire codes to avoid this in the future"; and, "We will be working with the City of Minneapolis, the Fire Department and the Management Company on these safety issues."

■ These statements cannot reasonably be construed to have bound Many Rivers to modify the screens to prevent a fall. A landlord's promise to repair parts of premises for safety purposes is not an express agreement to repair to a certain standard. *Normandin v. Freidson*, 181 Minn. 471, 474, 233 N.W. 14, 15 (1930); *cf. Shaw v. Butterworth*, 327 Mo. 622, 38 S.W.2d 57, 61 (1931) (holding that landlord was liable for injuries a child sustained after falling through a window screen where landlord voluntarily assumed the duty to install screens that would "prevent the children [from] falling thereout"). At most, the notices reported that Many Rivers would be "meeting" with officials to "try" to determine "if" any "options" exist within the law to improve window safety and that it "will be working" with city and management personnel on the "safety issues." This is not the language of a contract creating any duty to modify the windows.

### DECISION

The district court did not err by granting summary judgment to Many Rivers, which had no common-law or contractual duty to modify its window screens to with-

stand the force of a child, and it breached no duty to warn of a dangerous condition.

**Affirmed.**